ELLIS, Judge.
Plaintiff herein, Talbert and Sharkey Inc., a corporation which operated a children’s clothing store, carried insurance on its merchandise and fixtures with the South Carolina Insurance Company, the defendant herein. The contents of the store were destroyed by fire on the evening of November 6, 1963. The defendant refused payment under the policy on the ground that the fire was incendiary in origin and was procured by plaintiff or someone acting for plaintiff. This suit was filed asking some $25,000.00 for the damages, together with interest and attorney’s fees because of arbitrary refusal to pay plaintiff’s claim. To the petition, defendant interposed the de *11 fense of arson, and alternatively, alleged the amount of the claim to be in excess of the loss actually suffered by plaintiff.
After a lengthy trial, judgment was rendered in favor of plaintiff and against defendant in the amount of $23,698.50 and denying the demand for penalties and attorney’s fees. From the latter judgment, defendant perfected a suspensive appeal.
The record shows that the business operated by the plaintiff herein had been operated by Mrs. Frankye Sharkey alone, prior to its incorporation in July, 1962. Thereafter, the principle shareholders were Mrs. Sharkey and Harry S. Talbert, although Mrs. Sharkey continued to run the business. Apparently, the operation was not successful and Mr. Talbert had to put a good bit of money into the business in order to keep it going. At some time prior to the fire, Mr. Talbert died and left all of his stock in the business to Mrs. Sharkey, who thereby became the sole stockholder. According to the testimony of the bookkeeper, during the last ten months of the operation of the business, it lost over $2,000.00, without any allowance being made for depreciation. Many of the accounts payable had been placed in the hands of attorneys for collection, as evidenced by a number of seizures placed on the cause of action herein.
In May, 1963, the insurance coverage was increased from $15,000.00 to $25,000.00. That policy was written through Mrs. Sharkey’s daughter, who at that time operated an insurance agency. Shortly before the fire, a notice of cancellation of the policy was issued by the defendant corporation, which cancellation was to become effective on November 8, 1963, some two days after the fire. Mrs. Sharkey’s daughter, Mrs. Bookman, who by that time was employed by another insurance agency, testified that she had corresponded with another company relative to placing the insurance as of the 8th, but the records of the insurance agency failed to reveal that any such correspondence had ever taken place.
Mrs. Sharkey testified that on the Monday preceding the fire, November 4, she was forced to go home and go to bed because of an asthma attack. She further testified that she was still sick in bed with the said asthma attack at the time of the fire. In her absence, the store was operated by Mrs. Margaret Germany, who was married to Mrs. Sharkey’s nephew. It was Mrs. Germany’s custom to go to Mrs. Sharkey’s house in the morning, to get the key to the building. When she left work in the evening, she would return the key to Mrs. Sharkey. The store was generally kept open from nine o’clock in the morning until six o’clock in the evening.
On the two evenings before the fire, Mrs. Germany’s husband was working in the back of the store painting the bathroom walls. According to the testimony of the various witnesses, there were three cans of paint and some paint thinner on the premises. Mr. Germany stated that he left the paint cans closed, but they were found open after the fire. On the night of the fire, he testified that he did not paint because his wife complained of a headache and did not want to stay late.
On the evening of the fire, Mrs. Germany testified that she closed up the store as usual and drove to Mrs. Sharkey’s house. While there, she was having trouble with her automobile and could not get it started. Therefore, she called her husband, who came to Mrs. Sharkey’s house in a truck. He got the Germany car started, but since his wife did not wish to drive the truck home, she borrowed Mrs. Sharkey’s car, leaving the truck at Mrs. Sharkey’s house. Mr. Germany took his wife’s car back to his place of business to work on it, and Mrs. Germany returned home.
Shortly after 10:00 o’clock that night, a Mrs. Didier, who lived behind the shop, was disturbed by an explosion which occurred while she was watching television. She and her children went and looked out *12 of the back door and discovered the fire. Just after she looked, there was a second explosion, which blew open the back doors of the building. They called the fire department, which received the call at 10:23 p. m., and which responded immediately.
The firemen who testified estimated that they arrived at the scene within eight or ten minutes after the fire started, and testified that it was not a large fire in the amount of flame, but that there was an unusual amount of smoke and soot. They testified that they were able to wet down the fire and put it out fairly easily, but that the fire kept springing back to life. They further testified that they smelled an unusual and somewhat sickening odor when they first entered the building. Among the debris found in the storeroom at the rear of the store, at the spot at which all of the firemen witnesses testified thé fire had originated, there were three tires and an innertube. It was also at this point that the floor tiles had a “spongy” or soft character. Samples of the tiles were analyzed, and a flammable liquid was distilled from them, similar in chemical composition to a liquid which was distilled from the paint cans on the premises. There was also evidence of paint having been spattered on the tires, and on some newspaper which was found in the back room. The fire itself was restricted to the storage room in the rear of the store where, according to Mrs. Sharkey, the greater part of the inventory was stored.
Frank E. Domma, Chief of the Baton Rouge Fire Prevention Bureau, testified as an expert relative to the fire. He was of the opinion that the fire was incendiary in origin, basing his opinion upon the point of origin of the fire, the fact that the paint was found to be splashed over the tires and the newspapers found in the back, and upon the analysis of the liquid distilled from the floor tiles. He was further of the opinion that, assuming that a flammable liquid such as paint thinner had been poured over the tires in the back of the office, and further assuming that some person had struck a match in order to ignite the fire, he would have been caught in the explosions which resulted. He stated that this type of fire would have to be started by some kind of timing device. However, no such timing device was found in the debris.
It is clear from the evidence that both the front door and the back doors were locked at the time of the explosions. The back door, which was secured by a padlock, was still fully locked after the fire, although the hasp had pulled loose when the doors were blown open.
Chief Domma also testified that, since the debris from the inside of the building had been taken outside before he visited the scene, he could not eliminate completely the possibility of spontaneous combustion as the originating cause of the fire, and was unable to say if there had been a gas leak on the premises prior to the fire.
With reference to the automobile tires, Mrs. Sharkey and Mrs. Germany both testified that the tires had been in the storeroom for some time, although their testimony was somewhat at odds as to where the tires had been kept. However, the maid who cleaned the store twice a week testified that she had never seen the tires on the premises, although she had seen them stored in the Sharkey garage. Mr. Germany testified that he had never seen the tires on the premises.
The law in a case of this sort is set forth in Sumrall v. Providence Washington Insurance Co., 221 La. 633, 60 So.2d 68 (1952) :
“Inasmuch as the defense is arson, the burden rested upon the insurer to establish, by convincing proof, that the fire was of incendiary origin and that plaintiff was responsible for it. It is well settled that the insurer need not prove its case against a plaintiff beyond a rea *13 sonable doubt; it suffices that the evidence preponderates in favor of the defense. Proof, of course, may be and invariably is entirely circumstantial. And, in these instances, a finding for defendant is warranted where the evidence is of such import that it will sustain no other reasonable hypothesis but that the claimant is responsible for the fire. Adams v. Liverpool & London & Globe Insurance Co., 5 Orleans App. 301; St. Philip v. Lumbermen’s Ins. Co. of Philadelphia, 18 La.App. 331, 137 So. 359; Wilson v. Aetna Ins. Co., La.App., 161 So. 650; Parker v. Hartford Fire Ins. Co. of Hartford, Conn., La.App., 163 So. 435; Picoraro v. Insurance Co., 175 La. 416, 143 So. 360; Di Martino v. Continental Ins. Co. of New York, 187 La. 855, 175 So. 598 and Pizzolato v. Liverpool & London & Globe Ins. Co., 207 La. 101, 20 So.2d 551. Accordingly, the questions presented in matters of this sort are answered by the particular facts of the controversy.”
It is not sufficient that the circumstantial evidence presented create a mere suspicion of the guilt of the defendant. Pizzolato v. Liverpool & London & Globe Ins. Co., 207 La. 101, 20 So.2d 551 (1944).
In the Sumrall case, supra, the court also, said, relative to the burden of proof placed on the defendant, that proof of a motive for destroying the property, when coupled with proof of the incendiary origin of the fire, “would, in the absence of believable rebuttal evidence, be sufficient to sustain the affirmative defense pleaded by the insurer. * * * However, the inference resulting from this circumstantial proof must be weighed in connection with plaintiff’s denials of wrongdoing.”
There can be little doubt that defendant has shown the existence of a motive on the part of plaintiff for destroying the contents of the store. The business had been losing money for at least two years, and plaintiff was being pressed by her creditors, a number of whom had placed their claims with attorneys for collection.
However, we cannot find that defendant has shown the incendiary origin of the fire by a preponderance of the evidence. Their own witness, Chief Domma, was unable to exclude two reasonable hypotheses as to the origin of the fire, i. e., spontaneous combustion and ignition by the pilot light of the heater of gas leaking into the room. It cannot be denied that all of the circumstances surrounding the fire create a grave suspicion as to the culpability of plaintiff, but proof leading to a suspicion is not sufficient. The trial judge, who heard the witnesses, so found, and we cannot say that in so holding he committed manifest error.
With reference to quantum, we find that plaintiff has proved its loss by a preponderance of the evidence. - The only real attack made by defendant on this evidence is based on the failure of a number of creditors of the firm to confirm the amount of their accounts. This, of course, is negative evidence, and proves only that the creditors do not answer their mail. Other than that, defendant’s computation as to the inventory is substantially the same as that of plaintiff.
For the above and foregoing reasons, the judgment of the district court is affirmed at appellant’s cost.
Affirmed.