W. Fritz D. Mueller filed this action against Hartford Insurance Company on May 28, 1982, in the Circuit Court of Mobile County, alleging breach of contract and bad faith refusal to pay an insurance claim. The trial court granted summary judgment on the bad faith claim and certified the judgment as final, pursuant to Rule 54 (b), Alabama Rules of Civil Procedure. Plaintiff appeals from that final judgment. We affirm.
On December 4, 1980, a house in Baldwin County owned by Fritz and Helga Mueller was destroyed by fire. The house was insured by Hartford under a policy issued through Ebert Insurance Agency in Foley, Alabama. Fritz Mueller notified Ebert Insurance Agency of the loss on December 9, 1980. Ebert relayed the information to Gary Knight, the manager of Hartford's claims office in Mobile, and Knight notified W.T. Crowgey, Hartford's general claims adjuster in Atlanta.
Crowgey interviewed Mueller on December 10, 1980. He characterizes Mueller's account of the circumstances surrounding the fire as the most bizarre that he had *Page 555 
heard in his years in the insurance claims business. Nonetheless, he decided to employ Brian T. Maphet of INS Investigations to investigate the fire, rather than advise denial of the claim. On December 10, 1980, Crowgey and Maphet examined the site of the fire for one and one half hours. Maphet returned to the site on the following morning, took photographs, and sketched a diagram of the scene. Later that day, he recorded an interview with Mueller.
Maphet in the course of his investigation made three written reports based upon his examination of the fire scene and his interviews with various witnesses. In the first report, dated December 29, 1980, Maphet concluded:
 "All providential and accidental causes have been eliminated. This fire occurred as a result of a liquid accelerant being poured on the floor and ignited."
Maphet stated in the final report, dated February 20, 1981, however:
 "It should be noted although my first report under the caption of Determination of Cause and Origin states accidental causes have been eliminated, this is an error, as I was referring to electrical or providential causes only. The insured clearly paints a picture of an accident occurring that I cannot at this time disprove from my fire scene examination performed."
Hartford denied Mueller's claim on May 29, 1981, "due to his apparent involvement in the origin of the fire." Hartford did, however, pay two claims arising from the fire: $18,642.00 to Helga Mueller, and $57,216.00 to the Federal Land Bank of New Orleans, which held a mortgage on the house.
Fritz Mueller and his wife Helga had moved to New Jersey from their home in Baldwin County in the spring of 1980. Before leaving, the Muellers had all utilities turned off, removed valuables from the house, and otherwise closed the house for an indefinite period. According to statements made by Fritz Mueller during the investigation of the fire, as well as statements made in deposition, the move to New Jersey was made so that he could be near a New York hospital where he planned to undergo eye surgery.
In his brief, Mueller states that he and Mrs. Mueller were having marital difficulties during 1979 and 1980 and separated sometime after the eye surgery. Mueller testified in deposition that he then traveled by bus to New Orleans to consult another eye specialist. Mueller maintains that he stayed in New Orleans for a few days; at the conclusion of his stay, he planned to return immediately to New York. When he discovered that the bus made a stop in Mobile, however, he decided to spend a few days at his Baldwin County home.
Mueller states that he arrived in Mobile on December 3, 1980. He rented a car and went shopping, purchasing, among other things, a few days' worth of groceries and some varnishing materials. Later, he had a couple of drinks on the beach and, at approximately 10:00 p.m., went to bed. He awoke sometime around 2:30 a.m. and decided to varnish an area of wooden floors in the house. He maintains that he had to work primarily by candlelight, since the utilities to the house had been disconnected. After varnishing for some time, Mueller went outdoors to smoke a cigarette. He said that when he attempted to light the cigarette, undried varnish on his hands ignited. He said he rushed inside, and the fire spread to the house. He states, however, that he was able to put the fire out in about three minutes.
Mueller claims that he decided to drive to a motel near his home in order to telephone the fire department. He explains that he decided to use the motel phone instead of a close neighbor's because he was not sure whether any of his neighbors were home and because the home of his closest neighbor was not easily accessible by foot. As Mueller was driving to the motel, his rented car ran off the road and into a ditch near the home of John Bemis. Bemis helped Mueller get the car back onto the road. Mueller failed, however, to tell Bemis that his house had been on fire or that he *Page 556 
had sustained burns. In deposition, Mueller testified as follows:
 "Q. Did you mention to Mr. Bemis the fact of a fire at your house?
"A. Well, there was no fire.
 "Q. Did you mention to Mr. Bemis the fact of a prior fire at your house?
"A. No, I didn't see any reason.
 "Q. Did you mention to him where you were going or what you were doing?
"A. No.
"Q. Did you know Mr. Bemis.
"A. Yes, I know him casually.
 "Q. Did you make a conscious decision not to mention these things to him at the time?
 "A. We were both busy and at a considerable span apart. In other words, we were giving each other instructions as to how to get that vehicle out. I wasn't going to stop and have conversation. . . ."
Mueller states that as he was about to leave Bemis, a neighbor drove by and yelled to him, "Fritz, your house is on fire." Mueller says he drove back to the house and that, when he arrived, it was engulfed in flames. He was later taken to the hospital by ambulance and treated for the burns he sustained during the fire.
The plaintiff in a bad faith case has the burden of proving:
 "(a) an insurance contract between the parties and a breach thereof by the defendant;
 "(b) an intentional refusal to pay the insured's claim;
 "(c) the absence of any reasonably legitimate or arguable reason for that refusal (the absence of a debatable reason);
 "(d) the insurer's actual knowledge of the absence of any legitimate or arguable reason;
 "(e) if the intentional failure to determine the existence of a lawful basis is relied upon, the plaintiff must prove the insurer's intentional failure to determine whether there is a legitimate or arguable reason to refuse to pay the claim.
 "In short, plaintiff must go beyond a mere showing of nonpayment and prove a bad faith nonpayment, a nonpayment without any reasonable ground for dispute. Or, stated differently, the plaintiff must show that the insurance company had no legal or factual defense to the insurance claim.
 "The `debatable reason' under (c) above means an arguable reason, one that is open to dispute or question. Webster's Third New International Dictionary (1931) at 116. See Chavers [v. National Security Fire Cas. Co., 405 So.2d 1] at 10; see also Embry, J., concurring on rehearing in Aspinwall v. Gowens, Ala., 405 So.2d 134 (1981)."
National Security Fire Cas. Co. v. Bowen, 417 So.2d 179, 183
(Ala. 1982). Accordingly, in National Savings Life Ins. Co. v.Dutton, 419 So.2d 1357, 1362 (Ala. 1982), we explained:
 "In the normal case in order for a plaintiff to make out a prima facie case of bad faith refusal to pay an insurance claim, the proof offered must show that the plaintiff is entitled to a directed verdict on the contract claim and, thus, entitled to recover on the contract claim as a matter of law. Ordinarily, if the evidence produced by either side creates a fact issue with regard to the validity of the claim and, thus, the legitimacy of the denial thereof, the tort claim must fail and should not be submitted to the jury."
In McLaughlin v. Alabama Farm Bureau Mut. Cas. Ins. Co.,437 So.2d 86 (Ala. 1983), we affirmed a summary judgment in favor of Farm Bureau on McLaughlin's bad faith claim, which arose from the fire destruction of his building. Farm Bureau denied McLaughlin's claim based on the following circumstances: Liquid accelerants were found in the portion of the building where the fire started; McLaughlin falsely claimed that certain items were destroyed in the fire; he had misrepresented his financial condition to Farm Bureau; and he had falsely represented that he had never been involved in litigation. The Court, writing through Chief Justice Torbert, concluded that Farm Bureau had, at least, an arguable reason to deny the claim: *Page 557 
 "If any one of the reasons for denial of coverage is at least `arguable,' this Court need not look any further. We are of the opinion that the plaintiff was not entitled to a directed verdict on the contract claim, as required by National Savings Life Insurance Co. v. Dutton [419 So.2d 1357], because there was conflicting information before the trial court on each of the reasons for denial of coverage. . . . Thus, there was a genuine dispute about information on the application, and that dispute provided an arguable reason for denying coverage. The parties have argued both sides vehemently; however, we are in accord with the trial court in being unable to say there was no arguable reason for denial of coverage. The validity of the reasons will be tested in the breach of contract action still pending in this case." (Emphasis in original.)
437 So.2d at 91.
Hartford argues that it had at least a debatable reason for denying the claim in this case, based on its suspicion that Mueller intentionally set the fire. We agree.
Arson by an insured is an absolute defense to an action upon the policy, even in the absence of language in the policy so providing. Hosey v. Seibels Bruce Group, South Carolina Ins.Co., 363 So.2d 751 (Ala. 1978). An arson defense may be proven either by direct or circumstantial evidence. In Great SouthwestFire Ins. Co. v. Stone, 402 So.2d 899, 900 (Ala. 1981), we quoted at length from the brief of the appellee-insured; part of that quoted material is as follows, and we consider it to be a correct statement of the law:
 "`It is not necessary for the insurer to prove the defense of arson beyond all reasonable doubt, but a preponderance of the evidence suffices. Such proof may be made by circumstantial evidence, if the inferences are not too remote and all circumstances, including the inferences, are of sufficient force to bring minds of ordinary intelligence to a persuasion of incendiarism by a fair preponderance of the evidence. Appleman, Insurance Law and Practice § 12682, pp. 89-90. To sustain the defense of arson, the insurer, when relying on circumstantial proof, must present evidence which is so convincing that it will sustain no other reasonable hypothesis but that the plaintiff was responsible for the fire. Wallace v. State Farm Fire and Casualty Insurance Company, 345 So.2d 1004
(La.App. 1977), Sumrall v. Providence Washington Insurance Company, 221 La. [633,] 634, 60 So.2d 68
(1952). Evidence which affords nothing more than mere speculation, conjecture, or guess is wholly insufficient to warrant submission of the case to the jury. Headrick v. United Insurance Company of America, 279 Ala. 82, 181 So.2d 896 (1966); Talbert and Sharkey, Inc. v. South Carolina Ins. Co. (1967) 250 La. 959, 200 So.2d 10; Jamaica Time Petroleum, Inc. v. Federal Ins. Co., 366 F.2d 156 (10th Cir. 1966), cert. denied, 87 S.Ct. 753, 385 U.S. 1024, 17 L.Ed.2d 674. See also Pacific Fire Ins. Co. v. Overton, 256 Ala. 400, 55 So.2d 123 (1951). The scintilla rule as to evidence does not conflict with the above rule that speculation cannot support a verdict. Continental Casualty Co. v. Paul, 209 Ala. 166, 95 So. 814 (1923).
 "`To establish a prima facie case of arson for the purpose of denying coverage under the fire policy, the defendant would have to prove by competent and relevant evidence arson by someone, motive by the plaintiff and unexplained surrounding circumstantial evidence implicating the plaintiff. Lawson v. State Farm Fire and Casualty Ins. Co., 41 Colo. App. 362, 585 P.2d 318 (1978); Cora Pub, Inc. v. Continental Casualty Company, 619 F.2d 482 (5th Cir. 1980).'"
In the case at hand, it cannot be denied that Mueller paints a very unusual picture of the circumstances surrounding the fire — that a man with a vision problem decided in the middle of the night to varnish by candlelight the floors of a house *Page 558 
that had been empty for a number of months.
To be sure, unusual circumstances sometimes arise, and Mueller may well be able to prove in the contract action now pending before the trial court that the facts occurred as he describes them. We find nothing, though, in Hartford's denial of the claim based on Mueller's story or on Hartford's investigation of this case which amounts to evidence of bad faith.
AFFIRMED.
TORBERT, C.J., and MADDOX, JONES, ALMON, EMBRY, BEATTY and ADAMS, JJ., concur.
FAULKNER, J., concurs in the result.