This appeal involves an alleged failure by American Employers' Insurance Company ("American"), to pay an insurance claim based on a policy of insurance issued to cover a trailer owned by Continental Electric Company ("Continental"). The specific question presented is whether American was obligated to pay a claim for display samples of Continental's products that were located in the trailer and were damaged when the trailer overturned. American paid a part of Continental's claim, but claimed that the contract of insurance did not cover the additional losses incurred by Continental. Continental then sued American, the insurance agency of Fowlkes and Smith, and John Creel, an employee of Fowlkes and Smith. The trial judge granted American's summary judgment motion on Continental's claims of: (1) breach of an insurance contract with regard to the trailer; (2) breach of contract with regard to the samples located in the trailer; (3) bad faith refusal to pay; (4) a request for a declaratory judgment as to its rights under the language of the policy; (5) fraud; and (6) breach of an oral contract to insure, or negligent failure to insure the samples by the insurance company's agent. Claims (5) and (6) depend on a determination of whether Creel was an agent of American.
We reverse and remand as to claims (1), (5), and (6), but affirm as to all other claims. *Page 85 
 I
Continental purchased a trailer in October of 1980, intending to use it to display samples of its products (electrical distribution devices) to its customers. Continental did extensive renovation of the trailer, including the installation of partitions and aluminum peg boards on the inside of the trailer, in order to customize the trailer for its specific use. Galvanized and polished samples of Continental's products were then attached to the peg boards.
The trailer overturned and there was damage to the trailer and the display samples.
One of the specific issues presented is whether American has properly paid the claims filed on the trailer involved in this case exclusive of the samples it carried.
American made a payment of $9,329 to cover the claims for the value of the trailer, exclusive of the samples, and later made additional payment. Continental claims the trailer was valued at $22,000 and the samples were worth only $5,000 to $7,000. Continental, therefore, claims the insurance payment should have been at least "around $15,000." (The $22,000 cost of the trailer itself minus the $5,000 to $7,000 value of samples.)
American argues that the trailer had been purchased for $8,100 thirty months prior to the accident, and that was, in fact, the price paid by Continental to replace the trailer that overturned. American further argues that it has paid a total of $10,179 in claims for the trailer. The language of the insurance policy expressly states that it is at American's option to "Pay for, repair or replace damaged or stolen property . . . ."
To decide this issue, the trial judge could properly consider any material that would have been admissible at trial, as well as material submitted in support of or in opposition to the summary judgment motion. Purvis v. PPG Industries, Inc.,502 So.2d 714, 715-16 (Ala. 1987). Whether an insurance policy is ambiguous is a question of law for the trial court. SmithsWater Authority v. City of Phenix City, 436 So.2d 827, 830
(Ala. 1983). If the contract is deemed unambiguous by the trial court, the court must determine the nature and effect of its terms as a matter of law. Brown Mechanical Contractors v.Centennial Insurance Co., 431 So.2d 932, 942 (Ala. 1983).
In this case, the trial judge had before him the policy and the affidavits of the parties. He determined, as a matter of law, that American had complied with the policy terms regarding coverage on the trailer by paying the replacement cost of the trailer. We find, however, a scintilla of evidence that American failed to pay the amount due for the trailer. Consequently, a genuine issue of material fact existed; therefore, summary judgment was improper.
 II
The next issue is whether the policy issued by American covers the samples on board the trailer when it overturned. The parties disagree over whether the policy, as written, covers the loss of the display samples. The pertinent language from the policy is:
 "(1) We will pay for loss to a covered auto or its equipment under: . . .
"* * *
 "(c) Collision Coverage — caused by the covered auto's collision with another object or its overturn." (Emphasis added.)
Put more simply, the issue is whether the displays inside the trailer were "equipment" within the meaning of the policy. The trial judge obviously determined there was no genuine issue of material fact on this point, concluding that, as a matter of law, the term "a covered auto or its equipment" did not include samples or displays in the trailer.
Black's Law Dictionary 630 (4th ed. 1951), defines equipment as "[f]urnishings, or outfit for the required purposes. An exceedingly elastic term, the meaning of which depends on context." In Webster's New Collegiate Dictionary, "equipment is defined, among others, as the set of articles or physical resources serving to equip a . . . thing: as (1): the implements used in an operation or activity." That same dictionary defines "equip" as meaning "to furnish *Page 86 
for services or action. . . ." Both the appellants and the appellees have cited cases somewhat similar to this, but they have not cited, and our research has not revealed, a case directly on point.
We cannot say that the trial judge erred in construing the definition of equipment as excluding the display samples hauled in Continental's trailer. He obviously determined that the meaning of the word "equipment" did not include the display samples Continental had put in the trailer. The construction of a written agreement is a function of the court. Jackson v.Hall, 460 So.2d 1290, 1292 (Ala. 1984), and, "[W]here there is no ambiguity in [an insurance contract's] terms, this Court must enforce the contract as written and cannot defeat express provisions in the policy, including exclusions, by making a new contract for the parties." Turner v. United States Fidelity Guaranty Co., 440 So.2d 1026, 1028 (Ala. 1983). This Court will not construe policies so as to provide coverage not intended by the parties. Newman v. St. Paul Fire Marine Ins. Co.,456 So.2d 40 (Ala. 1984).
In reviewing the policy and the affidavits, the trial judge was required to give the policy language its common interpretation and its rational and practical construction.Green v. Merrill, 293 Ala. 628, 631, 308 So.2d 702, 704 (1975). The trial judge found the language of the contract to be unambiguous; he properly interpreted it, as a matter of law, to deny coverage under the particular facts of this case. The summary judgment on this issue is due to be affirmed.
 III
Next, we turn to Continental's bad faith claim. It is necessary to prove five elements to sustain a claim of bad faith in Alabama:
(a) Existence of an insurance contract and a breach by the insurer;
(b) Intentional refusal to pay the insured's claim;
(c) Absence of any legitimate or arguable reason for refusal.
(d) The insurer's actual knowledge of the absence of an arguable reason; and
(e) If the intentional failure to determine the existence of a lawful basis is the theory relied upon, the insured must prove the insurer's intentional failure to determine whether there was a legitimate or arguable reason to refuse to pay the claim. Mueller v. Hartford Insurance Co. of Alabama,475 So.2d 554, 556 (Ala. 1985).
 "In the normal case in order for a plaintiff to make out a prima facie case of bad faith refusal to pay an insurance claim, the proof offered must show that the plaintiff is entitled to a directed verdict on the contract claim and thus, entitled to recover on the contract claim as a matter of law. Ordinarily, if the evidence produced by either side creates a fact issue with regard to the validity of the claim and, thus, the legitimacy of the denial thereof, the tort claim must fail and should not be submitted to the jury."
National Savings Life Ins. Co. v. Dutton, 419 So.2d 1357, 1362
(Ala. 1982).
Here, the trial judge apparently found on the evidence before him that no fact issue was created on the element of whether there was a "debatable reason" for the insurer's failure to pay and, therefore, that American was entitled to summary judgment on this claim. "The debatable reason . . . means an arguable reason, one that is open to dispute or question." Mueller v.Hartford Insurance Co. of Alabama, 475 So.2d 554, 556 (Ala. 1985). The following facts before the trial judge supported his decision that a debatable reason for refusal to pay existed and that summary judgment in favor of American was proper; the trial judge's earlier decisions construing the unambiguous contract language; the statements of Creel in deposition testimony that he told Continental the samples were not covered; the replacement costs of the trailer in question; the payment already made by Continental; and the fact that Continental's complaint admitted it was in doubt and uncertain as to its rights under the policy.
"In short, plaintiff must go beyond a mere showing of non-payment and prove a *Page 87 bad faith nonpayment, a nonpayment without any reasonable ground for dispute." National Security Fire Casualty Co. v.Bowen, 417 So.2d 179, 183 (Ala. 1982).
We hold the trial judge, based on the record before him properly concluded that a debatable reason for American's refusal to pay existed, and summary judgment on this claim was, therefore, proper.
 IV
Next, Continental contends that it was entitled to the declaratory judgment sought in paragraph 25 of its complaint. The arguments presented in support of a declaratory judgment are no different from those presented in support of the contract claims discussed in parts I and II of this opinion. By granting summary judgment, the trial judge, in effect, issued a judgment declaring what he considered to be the proper construction of the policy — i.e, the construction urged by American. We affirm the trial court's refusal to declare rights separate from its rulings on the direct claims.
 V
Next, Continental advances three arguments that hinge on a determination of whether an agency relationship existed between Creel and American. We will first resolve this question, and then look at each of the three arguments in turn.
The evidence before the trial judge when he granted summary judgment, viewed in the light most favorable to Continental, would tend to show: Fowlkes and Smith was an insurance company and John Creel worked as an agent for Fowlkes and Smith. Creel handled all of Continental's insurance; both Fowlkes and Smith and Creel could bind insurance coverage by American, and Creel was authorized to solicit and negotiate insurance contracts on American's behalf; Creel stated that if a loss had occurred on the day he bound insurance coverage on the trailer, American would have been liable for the loss.
The existence and scope of a principal-agent relationship is normally a question of fact to be determined by the jury.Oliver v. Taylor, 394 So.2d 945 (Ala. 1981); National SecurityFire Casualty Co. v. Bowen, 447 So.2d 133, 138 (Ala. 1983). We hold that these facts, therefore, viewed in the light most favorable to Continental, create a genuine issue of material fact as to whether Creel was an agent of American, and the trial court's grant of summary judgment was, therefore, improper on those aspects of the case hinging on whether Creel was an agent of American.
We emphasize that we do not hold Creel was an agent of American, and we do not hold that he had authority to bind American. We do hold that the evidence, viewed in the light most favorable to Continental, and under our scintilla rule, creates a genuine issue of material fact, on the following three issues, and these matters are to be resolved by a trier of fact.
 VI
The first issue hinging on the agency relationship is whether an oral contract to insure the display samples was formed by Creel with Continental. Officers of Continental contend a contract was formed; Creel states in his deposition, of course, that such a contract was not made. Such a conflict in the evidence made this issue improper for a grant of summary judgment. Resolution of this issue will be for a trier of fact after hearing the evidence and observing the witnesses.
It will be for a trier of fact to determine if Creel was American's agent.
 VII
The next issue is much like the last one discussed. Continental alleges that Creel and American were guilty of a negligent failure to insure the samples in the trailer. An agent who is authorized to solicit and receive applications for insurance, and to countersign and issue policies of insurance entrusted to him by the company for that purpose must be regarded quoad hoc as the general agent of the company.Hartford Accident Indemnity Co. v. Oglesby, 293 Ala. 620,625, 308 So.2d 695, 699 (1975). We are again careful *Page 88 
to state that we do not decide that Creel was an agent of American, nor that he negligently failed to insure the display samples. We do hold that enough evidence was before the trial judge to provide the necessary scintilla of evidence and avoid a grant of summary judgment.
 VIII
The third and final issue that hinges on the "agency" determination is the allegation of fraud. Continental contends that Creel, individually, and as an agent of American, defrauded it, and that both should be liable. Four elements are necessary to support a fraud claim of this type:
(1) There must be a false representation by the defendant to the plaintiff;
(2) The representation must concern a material fact;
(3) The plaintiff must justifiably rely on the representation; and
(4) The plaintiff must sustain damages as a result of its reliance.
Taylor v. Moorman Manufacturing Co., 475 So.2d 1187, 1188 (Ala. 1985). Additionally, to support a claim for punitive damages, a plaintiff must prove that the misrepresentation was made willfully to deceive or that the misrepresentation was made recklessly without knowledge of its falseness. 475 So.2d, at 1188.
The misrepresentations of an agent may be imputed to his principal, Washington National Insurance Co. v. Strickland,491 So.2d 872, 874 (Ala. 1985). The false representation made to Continental could consist of a misrepresentation of a material fact made willfully to deceive Continental; made recklessly without knowledge, and acted upon by Continental; or made mistakenly and innocently, and acted upon by Continental. Smithv. Reynolds Metals Co., 497 So.2d 93, 95 (Ala. 1986).
The record shows at least the scintilla of evidence needed to prove a cause of action for fraud against American, thereby precluding the entry of a summary judgment in American's favor. In other words, there is some evidence to show that Creel was an agent of American sufficient to hold American liable for Creel's allege fraudulent statements.
This Court in Burt v. Commercial Union Insurance Co.,489 So.2d 547, 549 (Ala. 1986), held, under facts similar to the fact in this case, that a scintilla of evidence existed from which to conclude that the insurance company's agent committed a fraud for which the insurance company would be liable to the insured. Similar to the facts in the Burt case, there is substantial evidence that Creel was a subagent o Fowlkes, so that his misrepresentation would be imputed to American. Even if Creel acted in some representative capacity directly with American rather than as a subagent through Fowlkes, a scintilla of evidence exists to indicate that he acted as a general agent with such authority that Creel's misrepresentations became those of American.
The following facts from the record, if proven at trial and believed by a trier of fact, would create a scintilla of evidence that Creel was an agent or subagent of American: at the time of the transactions with Continental, Creel was working at Fowlkes; Creel had been working at Fowlkes for 12 years; Fowlkes did a lot of business with American and Creel was a licensed agent with American through Fowlkes; Fowlkes could bind insurance coverage for American. Because Creel worked for Fowlkes, the authority under the agency contract between Fowlkes and American came into Creel's hands for execution. Creel could bind insurance coverage with American through Fowlkes. At all times referred to in Continental's complaint, Creel was an agent for American and was authorized to solicit and negotiate insurance contracts in American's behalf. The insurance policy involved in this litigation was initially issued from Fowlkes. Fowlkes would issue the actual policy from its offices. Fowlkes would have the policies at its office. Fowlkes would type whatever needed to be typed in the policies and do everything necessary to issue the policy. Once Fowlkes bound the insurance coverage, American was on the risk immediately. *Page 89 
There is evidence that Creel made a representation to Continental that the display samples were covered by insurance and that even after the trailer was damaged by the overturn, Creel made a similar statement that the samples were covered. Creel denied making such a representation. Viewing all these facts in the light most favorable to Continental, we hold that summary judgment on this claim was improper.
This Court, in United States Fidelity Guaranty Co. v.McKinnon, 356 So.2d 600 (Ala. 1978), held that the insurance company was estopped from denying that its sub-agent informed the insured that she had insurance coverage, and, therefore, the insured was covered by insurance.
American argues that summary judgment was also proper because there was no justifiable reliance on the part of Continental. Continental had been in possession of the policy for two and one-half years and had never examined it to see if it covered the display samples.
American relies upon Torres v. State Farm Fire CasualtyCo., 438 So.2d 757, 758-59 (Ala. 1983), where this Court held:
 "Because it is the policy of the courts not only to discourage fraud but also to discourage negligence and inattention to one's own interests, the right of reliance comes with a concomittant duty on the part of the plaintiffs to exercise some measure of precaution to safeguard their interests. In order to recover for misrepresentation the plaintiff's reliance must, therefore, have been reasonable under the circumstances."
That case is distinguishable on its facts.
In this case, we hold that the question of reliance is a fact question for the trier of fact. There is evidence that the policy premiums did not reflect the fact that the value of the trailer had been increased substantially, and that the policy should have reflected an increase. There was evidence that Continental's agents did not read the policy, even though Continental had it for over two years, to see if the display samples were covered. Under these facts, a trier of fact may find that Continental did not justifiably rely upon any representations of Creel. If so, that would eliminate an essential element of the cause of action, but, because we find that a fact question does exist, the trial judge erred in granting summary judgment as to the fraud count.
Based on the foregoing, we uphold the summary judgment as to all issues except three. These three issues, whether American committed a fraud on the insured, whether an oral contract was made so as to bind American and whether an agent of American committed an act of negligence in failure to insure the samples were not proper subjects for summary judgment. The cause is, therefore, affirmed in part, reversed in part, and remanded.
AFFIRMED, IN PART; REVERSED, IN PART; AND REMANDED.
TORBERT, C.J., and BEATTY, HOUSTON and STEAGALL, JJ., concur.
ADAMS, J., concurs in the result.