BOLIN, Justice.
Derrick Robertson appeals from a judgment entered on a jury verdict in favor of Gaddy Electric and Plumbing, LLC (“Gad-dy”), in his personal-injury action seeking damages for Gaddy’s alleged negligence and wantonness.

Procedural History

Robertson was employed by Collins Communications, which was hired to upgrade a video system, i.e., communications cable, telephone wiring, and data wiring, at the Commercial Bank of Demopolis (“the bank”). Robertson went to the bank on September 12, 2002, to run or to move video cable through a “chase,” or channel, above the ceiling in the “drive-in room” of the bank.[1] While in the drive-in room, Robertson climbed his ladder, lifted a ceiling tile from the ceiling, went up the into the ceiling about “mid-stomach,” and located the chase in which to run the cable. When Robertson started back down the ladder, his left hand came in contact with a metal object, causing him to receive an electrical shock; he fell from the ladder. Robertson sued Gaddy, the company that had initially installed the electrical wiring in the bank approximately 10 years earlier. Specifically, Robertson alleged that Gaddy had negligently and/or wantonly installed, maintained, or repaired the electrical wiring, creating a dangerous condition. The case was tried before a jury. At trial, Gaddy asserted the affirmative defenses of contributory negligence and assumption of the risk. Robertson moved for a judgment as a matter of law on those defenses, which the trial court denied. Gaddy also moved for a judgment as a matter of law. The trial court granted Gaddy’s motion and entered a judgment as a matter of law on the issue of wantonness; the negligence claims and the affirmative defenses were submitted to the jury. The jury returned a verdict in favor of Gaddy. Robertson filed a postjudgment motion for a new trial, which the trial court denied. Robertson appeals. We affirm in part, reverse in part, and remand.

Facts

The metal object that caused the electrical shock when Robertson’s hand came in contact with it was a junction box for a light switch that operated an overhead light fixture in the drive-in room. Specifically at issue was the electrical line or circuit running from the light switch to the junction box. The applicable code and building plans in this case required the presence of two separate grounds: (1) a ground wire running from the light switch to the junction box and (2) EMT, which is a solid, rigid electrical metal tubing or conduit through which three wires run. The EMT serves as a secondary ground when it is properly attached to the junction box. At trial, Robertson sought to show that there was no ground wire present in the EMT or conduit; that the secondary ground — EMT or conduit — was not the commercial grade required by the building plans; and that the conduit was not connected to the junction box, thereby creating a dangerous condition. Jerry Gaddy, the owner of Gaddy, testified as an expert at trial. He stated that his company had installed the wiring in the bank *78 according to the then applicable code and according to the building plans. He stated that the EMT or conduit comes assembled and that there are three wires inside it: a wire that carries the charge, a neutral wire, and a wire that acts as a ground. It is undisputed that during the construction phase of the bank a city inspector inspected Gaddy’s electrical work on two separate occasions and that the work passed inspection both times. Jerry Gaddy also stated that his employees always check their own work. Barbara Winters, the branch manager of the bank at the time of Robertson’s accident, testified that during the 10-year period before Robertson’s accident there had not been any problems with the light switches in the drive-in room and that the drive-in room had never been remodeled, repainted, or re-wallpapered. However, she did state that the equipment in the drive-in room was periodically “worked on” and/or upgraded. The testimony was inconclusive as to whether since the original construction Gaddy had made any repairs to the area where the accident occurred. However, nothing in Gaddy’s invoices indicated that Gaddy had performed any work in the drive-in room, other than the original construction work. Immediately following Robertson’s accident, Jerry Gaddy went to the scene to inspect the wiring where the accident had occurred and to make the necessary repairs. Upon inspection, Jerry Gaddy discovered a short in the ground wire, i.e., there was a bare spot on the wire and/or the wire was not thoroughly or completely connected, causing the absence of a ground. Jerry Gaddy testified that the short actually caused the metal conduit to be “hot.” Jerry Gaddy also stated that when he inspected the area where the accident had occurred, everything, so far as he could tell, between the switch and the junction box was intact, apparently indicating that the EMT was attached to the junction box. However, he admitted that, for the accident to have happened, there obviously had to have been some sort of disconnection somewhere. Jerry Gaddy testified that shorts can develop after construction and that a ground can become disconnected after construction.
Robertson and his co-employee, Randall Smith, also testified at trial. Their testimony was conflicting regarding the number of wires present in the conduit, the type or quality of conduit present in the ceiling, and whether the conduit was attached to the junction box at the time of Robertson’s accident. Although Robertson contends on appeal that the required ground wire was not present in the EMT or conduit at the time of his accident, he testified at trial that he had a chance to look at the damaged wire before it was repaired and that the wire was not attached to anything.
“Q. Mr. Robertson, and ... you were talking about how you saw a part of the metal clad conduit had been removed and a piece of Romex put in place. Do you see that?
“A. Uh-huh.
“Q. Tell us what Romex is.
“A. Romex is a nonmetallic sheathed cable. It’s PVC jacketed. It’s typically what a homeowner would go to Lowe’s or office — a home supply house and purchase for home wiring.
“Q. ...
“Q. Now, in this case what you saw was a piece of Romex. Am I understanding ... that what you saw was a piece of Romex that had the black and white wires as well as a copper wire [i.e., ground wire]?
“A. That’s right.
“Q. And the copper wire was the wire that you saw folded back and not attached to anything?
*79 “A. That’s right.”
Smith testified that he was present as well before any repairs were made to the wires and that the ground wire was not present in the conduit at all. There was also conflicting testimony regarding the type of conduit present in the ceiling area. Gaddy testified that the building plans called for EMT. Robertson testified that he saw EMT, MC (metal clad) conduit, and Romex in the ceiling. Smith, however, testified that the conduit or tubing that he saw was not EMT, but was MC. Furthermore, Robertson testified that when he entered the ceiling he saw “that there were metal clad cables and conduits that was right in front of [him]” and that he did not see that the metal conduit had been pulled away from the junction box. His co-employee, Smith, however, testified that when he looked up into the ceiling, he could see that the conduit was not attached to anything. Smith further testified that there were other “items” on the same circuit, so there were other conduits coming out of the same junction box.
Jerry Gaddy testified that if the wiring had been installed according to how Smith saw it, i.e., with the ground wire missing, and both MC and Romex present, then the wiring would not have passed inspection during the construction phase. There was no evidence offered to show how the short was created; there was no evidence offered to show that a short existed when Gaddy installed the initial wiring; and there was no testimony offered to show that the conduit was not attached to the junction box at the time Gaddy initially installed it.

Wantonness

Robertson argues that the trial court erred in entering a judgment as a matter of law for Gaddy on the issue of wantonness. Robertson argues that there was sufficient evidence to create a question of fact from which a jury could conclude that Gaddy acted with reckless indifference to its duty to use EMT and a ground wire from the light switch to the junction box and that the failure to use either one or both of those protections was the proximate cause of his injuries. Gaddy argues that Robertson failed to present this argument to the trial court because he did not raise the wantonness issue in his motion for a new trial. In support of its position, Gaddy cites Carter v. Treadway Trucking, Inc., 611 So.2d 1034, 1035 (Ala.1992), in which this Court stated:
“[A] trial court cannot be held in error for failure to rule on a matter not presented to it or decided by it. See also Lowder Realty Co. v. Sabry, 542 So.2d 1240 (Ala.1989). Therefore, [Robertson’s] failure to raise a sufficiency-of-the-evidence argument in his motion for new trial precludes any consideration of the merits of this issue on appeal.”
We note that less than a year after Carter was decided this Court decided Clark v. Black, 630 So.2d 1012 (Ala.1993), in which this Court held that the plaintiffs failure to allege in his motion for a new trial that the trial court had erred in directing a verdict for the defendant on his wantonness claim did not bar review of the wantonness issue on appeal. The Clark Court reasoned that, although an unsuccessful movant’s failure to present the trial court with an opportunity to revisit the sufficiency-of-the-evidence issue in a motion for a judgment notwithstanding the verdict (now called a renewed motion for a judgment as a matter of law, see Rule 50, Ala. R. Civ. P.) precludes reversal on appeal of the denial of the motion for a directed verdict (now called a judgment as a matter of law, see Rule 50, Ala. R. Civ. P-),
“a trial judge does not grant a motion for a [judgment as a matter of law] with *80 a view to reserving the issue for revisi-tation. On the contrary, he does so with a view to terminating the issue, that is, to ‘save the time and trouble involved in a lengthy jury determination.’ 9 C. Wright & A. Miller, Federal Practice and Procedure § 2521 (1971).
“That the Rules do not, and, logically, need not, contain a [judgment-as-matter-of-law] ‘counterpart’ applicable to a party against whom a verdict has been directed, hardly deserves a passing reference. Had the trial court [entered a judgment as a matter of law] for Black on both theories of recovery in this case, that is, on the wantonness claim and the negligence claim, no post-judgment motion would have been required to preserve the sufficieney-of-the-evidence issues for appellate review. Logic and the policy of the Rules of Civil and Appellate Procedure thus compel us to conclude that this case is not within the sufficiency-of-the-evidence exception expressed in McGough v. Slaughter, 395 So.2d 972 (Ala.1981). Consequently, we will proceed to review the sufficiency of the evidence of wantonness.”
630 So.2d at 1016. We agree with the reasoning in Clark, and we overrule Carter to the extent that it conflicts with Clark. We note that Carter relies on the false premise that the trial court cannot be held in error for a matter not presented to it when the trial court there, in granting a directed verdict, did decide the issue.
A thorough review of the record reveals no substantial evidence that would warrant submission of the wantonness issue to the jury. Jury instructions for wantonness required Robertson to present substantial evidence that Gaddy acted with “knowledge of the danger or a consciousness that injury was likely to result from an act or omission to act.” Burlington Northern R.R. v. Whitt, 575 So.2d 1011, 1021 (Ala. 1990). As previously noted, Gaddy’s work passed city inspection on two separate occasions. Jerry Gaddy testified, and his testimony, which was undisputed, was that an electrical short can occur after construction and that it is possible for a ground to come loose after construction. The trial court in this case properly granted Gaddy’s motion for a judgment as a matter of law on Robertson’s wantonness claims.

Affirmative Defenses of Contributory Negligence and Assumption of the Risk

At trial, Gaddy asserted the affirmative defenses of contributory negligence and assumption of the risk on the part of Robertson. At the close of the testimony, Robertson moved for a judgment as a matter of law as to those two issues. The trial court denied his motion. After the jury returned a verdict in favor of Gaddy, Robertson moved for a new trial, arguing that there was no evidence to warrant submission of the two defenses to the jury.
“ ‘A [judgment as a matter of law] is proper (1) where the nonmoving party has failed to present substantial evidence regarding some element essential to her claim, or (2) where there is no disputed issue of fact upon which reasonable persons could differ. Rule 50(a), Ala. R. Civ. P.’ Teague v. Adams, 638 So.2d 836 (Ala.1994); see John R. Cowley & Bros., Inc. v. Brown, 569 So.2d 375, 376 (Ala.1990); Koch v. State Farm Fire & Cas. Co., 565 So.2d 226, 228 (Ala.1990); Dobbs v. Alabama Power Co., 549 So.2d 35, 36 (Ala.1989). ‘In reviewing a ruling on a motion for a [judgment as a matter of law], this Court views all the evidence in a light most favorable to the nonmovant and entertains such reasonable evidentiary inferences as the jury would be free to *81 draw.’ Cato v. Lowder Realty Co., 630 So.2d 378, 381 (Ala.1993). We must determine whether the nonmovant — defendant [Gaddy] — presented substantial evidence supporting each element of its affirmative defense. § 12-21-12(a), Ala. Code 1975; Koch v. State Farm Fire & Casualty Co., 565 So.2d 226 (Ala.1990). ‘[Substantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.’ West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989).”
Spence v. Southern Pine Elec. Coop., 643 So.2d 970, 971 (Ala.1994).
We first address the affirmative defense of assumption of the risk. During the trial, Robertson testified that he was responsible for his own safety. He stated that before he entered the ceiling area of the drive-in room, he examined the area where he would be working and he “saw that there were metal clad cables and conduits that [were] right in front of [him].” He stated that he did not see any of the conduit “pulled away” from the junction box. Smith, however, testified that when he looked through the ceiling tile, he saw that the conduit was not attached to the junction box, indicating that the circuit was not grounded:
“Q. You were actually — you actually were in that ceiling fairly close after the incident, correct?
“A. Yes, sir, I didn’t actually go to the top of the ladder and inside the wall, but with the ceiling tile out you could pretty much see everything that was pretty much there.
[[Image here]]
“Q. You could see where the junction box was?
“A. Yes, sir.
“Q. ... You could see the conduit on the wall, the pipe?
“A. Yes, sir.
[[Image here]]
“A. First visit, yes, sir. After the incident had taken place, before any changes had been made, before anybody had been on the scene to work in the ceiling, I did see ... flex conduit going from the switch location to the junction box. The clad conduit itself, which is flexible and metal, was not at that time attached to the box.
[[Image here]]
“Q. And it was not present all the way to the junction box?
“A. That is correct. It appeared in length to be able to have made it to the junction box, but it was not attached. ...”
(Emphasis added.)
Assumption of the risk applies to factual situations in which it is alleged that the plaintiff failed to exercise due care by placing himself or herself into a dangerous position with an appreciation of the risk. Harris v. Food Equip. Specialist, Inc., 559 So.2d 1066, 1068 (Ala.1990). “The affirmative defense of assumption of the risk requires that the defendant prove (1) that the plaintiff had knowledge of, and an appreciation of, the danger the plaintiff faced; and (2) that the plaintiff voluntarily consented to bear the risk posed by that danger.” Ex parte Potmesil, 785 So.2d 340, 343 (Ala.2000). Robertson testified that he did not see any disconnected conduit before he received the electrical shock. Shortly after the accident, Jerry Gaddy viewed the area and did not see any disconnected conduit. Jerry Gaddy testified that it was an unseen short that actually caused the electrical shock and that he did not discover that the primary ground wire was missing until he removed the switch plate. In other words, there would have been no way for Robertson to have seen that the primary ground wire was *82 disconnected when he looked at the junction box through the ceiling. Although Smith testified that after the accident he saw conduit that was disconnected, there was no evidence indicating that what Smith saw after the accident was what Robertson saw before the accident. Additionally, the conduit was a secondary ground, so even if we assume that Robertson saw the disconnected conduit, there was no way for Robertson to have seen the disconnected primary ground wire. Based on our review of the record, we conclude that Robertson did not voluntarily proceed with knowledge of the danger posed by the disconnected conduit that should have grounded the unseen short in the wire and prevented an electrical shock. Accordingly, the trial court committed reversible error in instructing the jury on the affirmative defense of assumption of the risk. Because of our disposition on the issue of assumption of the risk, we pretermit discussion of the issue of contributory negligence and the remaining issues raised by Robertson.

Conclusion

We affirm the judgment as a matter of law entered by the trial court with regard to Robertson’s wantonness claims. However, because we hold that the trial court erred in instructing the jury on the affirmative defense of assumption of the risk, we must reverse the judgment entered on the jury’s verdict and remand this action for a new trial on Robertson’s negligence claims.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
COBB, C.J., and LYONS, WOODALL, STUART, SMITH, PARKER, MURDOCK, and SHAW, JJ., concur.

. Both parties refer to the room where Robertson was injured as the "drive-in room,” which is the room where the teller equipment for the drive-through window is located.