MOORE, Judge.
 

 W.G. Yates & Sons, Inc. (‘Tates”), appeals from the Mobile Circuit Court’s judgment entered on a jury verdict in favor of Henry Burkhardt on his premises-liability claim against Yates. We reverse.
 

 Procedural History
 

 On or about August 9, 2006, Burkhardt filed a complaint alleging several claims against Yates, the general contractor in charge of the construction of the “Caribe III” condominium, and Burkhardt’s employer, Yarco, a subcontractor for Yates.
 
 [1]
 
 On July 20, 2007, Burkhardt filed his first amendment to the complaint, alleging that, as a result of Yates’s negligence and wantonness, he had been injured on a buck hoist
 
 [2]
 
 on the premises of Caribe III and had suffered damages. Yates answered the first amended complaint on or about August 15, 2007.
 

 After several proceedings not relevant to this appeal, the trial court held a trial on August 10, 11, 12, and 13, 2009. At the conclusion of the evidence,
 
 [3]
 
 Yates moved for a judgment as a matter of law on all claims. The trial court granted that motion with regard to the wantonness claims, but it denied the motion with regard to the claims asserted against Yates based on negligence. The trial court specifically instructed the jury on two separate theories of negligence against Yates: (1) a theory of premises liability and (2) a theory that Yates had negligently maintained, inspected, operated, and/or tested the buck hoist. The jury returned a verdict in favor of Burkhardt and against Yates only on the claim based on the theory of premises liability. On August 13, 2009, the trial
 
 *1097
 
 court entered a judgment on the jury’s verdict. On September 9, 2009, Yates filed a motion to alter, amend, or vacate the judgment requesting that the trial court enter a judgment “notwithstanding the jury[’s] verdict”;
 
 [4]
 
 that motion was denied on September 26, 2009. Yates filed its notice of appeal that same day.
 

 Standard of Review
 

 “When reviewing a ruling on a motion for a JML [judgment as a matter of law], this Court uses the same standard the trial court used initially in deciding whether to grant or deny the motion for a JML. Regarding questions of fact, the ultimate question is whether the non-movant has presented sufficient evidence to allow the case to be submitted to the jury for a factual resolution. The nonmovant must have presented substantial evidence in order to withstand a motion for a JML. A reviewing court must determine whether the party who bears the burden of proof has produced substantial evidence creating a factual dispute requiring resolution by the jury. In reviewing a ruling on a motion for a JML, this Court views the evidence in the light most favorable to the nonmov-ant and entertains such reasonable inferences as the jury would have been free to draw. Regarding a question of law, however, this Court indulges no presumption of correctness as to the trial court’s ruling.”
 

 Waddell & Reed, Inc. v. United Investors Life Ins. Co.,
 
 875 So.2d 1143, 1152 (Ala.2003) (citations omitted).
 

 Discussion
 

 On appeal, Yates first argues that the trial court erred in not entering a judgment as a matter of law in its favor on the negligence claim based on a premises-liability theory because, it says, the alleged defective condition of the buck hoist was open and obvious.
 

 “Breeden v. Hardy Corp.,
 
 562 So.2d 159 (Ala.1990), states the general duty a general contractor owes a subcontractor on a job site:
 

 “ ‘ “As invitor, ... the general contractor, was under a
 
 duty
 
 to have the premises free from danger, or if they were dangerous, to give its invitee ... [the subcontractor], sufficient warning to enable him, through the exercise of reasonable care, to avoid the danger. This
 
 duty
 
 includes the
 
 duty
 
 to warn the invitee of danger of which the invitor knows or ought to know, and of which the invitee does not know.
 

 “ ‘ “A general contractor is not responsible to a subcontractor for injury from defects or dangers which the subcontractor knows of, or ought to know of. ‘If the defect or danger is hidden and known to the owner, and neither known to the [subcontractor, nor such as he ought to know, it is the
 
 duty
 
 of the owner [general contractor] to warn the [subcontractor and if he does not do this, of course, he is liable for resultant injury.’
 

 “ ‘ “The
 
 duty
 
 to keep an area safe for invitees is limited to hidden defects which are not known to the invitee and would not be discovered by him in the exercise of ordinary care. All ordinary risks present are assumed by the invitee, and the general contractor or owner is under
 
 no duty
 
 to alter the premises so
 
 *1098
 
 as to [alleviate] known and obvious dangers. The general contractor is not liable to an invitee for an injury-resulting from a danger that was obvious or that should have been observed in the exercise of reasonable care.
 
 The entire basis of an invitor’s liability rests upon his superior knowledge of the danger that causes the invitee’s injuries. If that superior knowledge is lacking, as when the danger is obvious, the invitor cannot be held liable.”
 

 “ ‘...
 
 A plaintiff may not recover if the injury he receives is caused by an obvious or known defect in the premises.’
 

 “Breeden,
 
 562 So.2d at 160. (Emphasis added; first bracketed language added; citations omitted.) ....
 

 “Therefore, openness and obviousness of a hazard, if established, negate the general-contractor invitor’s duty to eliminate the hazard or to warn the subcontractor invitee of the hazard; and this negation of duty, in and of itself, defeats the subcontractor’s injury claim without the operation of any affirmative defense such as contributory negligence or assumption of risk. In other words, in this context, openness and obviousness, if established, negate the duty, defeat the claim, and pretermit any issue of the effect of openness and obviousness on the affirmative defenses of contributory negligence and assumption of risk. Only if the subcontractor plaintiff can establish some
 
 special
 
 duty on the general contractor to protect the subcontractor from open and obvious hazards as distinguished from the general contractor’s general duty as stated by
 
 Breeden,
 
 which does not require such protection, and only if the subcontractor plaintiff can likewise establish a breach of such special duty and proximately resulting damages might the issue of the effect of the openness and obviousness on the affirmative defenses of contributory negligence and assumption of risk become critical.”
 

 Sessions v. Nonnenmann,
 
 842 So.2d 649, 651-52 (Ala.2002).
 

 In the present case, in addition to the premises-liability theory, Burkhardt alleged that Yates had negligently maintained, inspected, operated, and/or tested the buck hoist. Although those allegations might be construed as allegations that Yates had breached a special duty, we note that the jury found in favor of Burkhardt on the premises-liability theory only. Thus, a determination in Yates’s favor on whether the alleged defect in the buck hoist was open and obvious would “defeat[] the subcontractor’s injury claim.”
 
 Sessions,
 
 842 So.2d at 652.
 

 In
 
 Heath v. Sims Brothers Construction Co.,
 
 529 So.2d 994 (Ala.1988), our supreme court affirmed a summary judgment for the defendant on the basis that the alleged defect was open and obvious. In
 
 Heath,
 
 an employee of a subcontractor was working on a scaffold when one of the wheels of the scaffold fell into a hole in the floor, causing the employee to fall. 529 So.2d at 995. The supreme court noted that the employee had
 

 “admitted that he was aware of the danger presented by the holes in the floor. If, therefore, the holes constituted a dangerous condition, under the facts of this case it was an open and obvious danger that the [employee] should have recognized, and that, by his own admission, he did recognize.”
 

 529 So.2d at 996.
 
 See also Sessions, supra
 
 (reversing a judgment in favor of a subcontractor on a premises-liability claim against a contractor when the alleged defect, an unguarded open stairwell, was un-disputably open and obvious).
 

 In the present case, Burkhardt testified that he had boarded the buck hoist to
 
 *1099
 
 travel to the 12th floor of the condominium. He testified that, when additional people boarded the buck hoist on-the way up, he had moved over and stood on the edge of a pallet of tile. Burkhardt testified that he was slightly squatting underneath the gear box of the buck hoist, that the operator stopped the buck hoist short of the landing for the 12th floor, that the operator started the buck hoist up again to move it up to the landing, and that the operator’s restarting the buck hoist had caused Burkhardt to stand straight up and hit his head on the bottom of the gear box, resulting in an injury to his neck. Burk-hardt testified that the tendency of the buck hoist to ride rough and jerk was a defect that had caused his injury.
 

 Burkhardt testified further that he had ridden the buck hoist before the day that he was injured and that he knew the buck hoist “rode rough” before that day. In. fact, he testified that it was the roughest buck hoist he had ever ridden. Burkhardt testified that the buck hoist was unsafe and that he had complained “several times” about the buck hoist to the project superintendent on the Caribe III jobsite. Burkhardt further testified that, before the day he was injured, he was aware that the operators of the buck hoist frequently started and stopped, jerking the hoist to get it to a floor level. A.B. Gordon, Burk-hardt’s expert witness, testified that he had also ridden the buck hoist. Gordon similarly testified that the buck hoist was the roughest buck hoist he had ever ridden, that it started and stopped in a rough fashion, and that the hoist would jerk a person’s knees as it started and stopped. Don Leatherwood, another witness called by Burkhardt, testified that he had ridden on the buck hoist and that he knew that it rode rough and jerky.
 

 Based on the foregoing, we conclude that the facts in this case are similar to the facts in
 
 Heath, supra,
 
 in that Burkhardt “admitted that he was aware of the danger presented by [the buck hoist].” 529 So.2d at 996. The buck hoist in this case “was an open and obvious danger that [Burk-hardt] should have recognized, and that, by his own admission, he did recognize.”
 
 Id.
 
 Thus, we find that the alleged defect in the buck hoist was open and obvious as a matter of law, a finding which “defeats [Burkhardt’s] injury claim.”
 
 Sessions,
 
 842 So.2d at 652. Accordingly, we conclude that the trial court erred in denying Yates’s motion for a judgment as a matter of law on the negligence claim based on the theory of premises liability; we therefore reverse the trial court’s judgment and remand the cause for the entry of a judgment in favor of Yates.
 
 [5]
 

 REVERSED AND REMANDED WITH INSTRUCTIONS.
 

 THOMPSON, P.J., and PITTMAN, BRYAN, and THOMAS, JJ., concur.
 

 [1]
 

 . Neither the claims alleged against Yarco nor the claims alleged against Yates in the initial complaint are at issue in this appeal.
 

 [2]
 

 . A buck hoist was described by Burkhardt's expert witness as being a "construction site personnel and material hoist[] for vertical transportation.”
 

 [3]
 

 .Yates did not present any evidence after Burkhardt rested his case.
 

 [4]
 

 . A motion for a judgment notwithstanding the verdict is "now called a renewed motion for a judgment as a matter of law.”
 
 Robertson
 
 v.
 
 Gaddy Elec. & Plumbing, LLC,
 
 53 So.3d 75, 79 (Ala.2010);
 
 see also
 
 Rule 50, Ala. R. Civ. P.
 

 [5]
 

 . Because we reverse the judgment based on our conclusion that the alleged defect in the buck hoist was open and obvious, we preter-mit discussion of the remaining issues raised by Yates on appeal.