SHORES, Justice.
Alabama Farm Bureau Mutual Casualty Insurance Company, Inc., sought a judgment declaring that it had no obligation to pay the claim of Keith Lamar Bush and Bonnie Dukes Bush made under a homeowner’s policy. It claimed that the Bushes’ alleged loss was the result of arson. After a trial on the merits, the jury found in favor of Farm Bureau. The Bushes appeal from the judgment entered on that verdict. We affirm.
On April 25, 1986, a house in Lowndes County, Alabama, belonging to the Bushes, was destroyed by fire. There were several fires at the Bush house that day — one at 8:00 a.m., one at 9:00 a.m., one at 11:00 a.m., and the 7:30 p.m. fire that destroyed the house. On that date, the Bushes had a homeowner’s insurance policy with Farm Bureau that was in full force and effect.
After the fire, the Bushes submitted a sworn proof of loss statement to Farm Bureau. Farm Bureau investigated the claim and then filed its declaratory judgment action. The Bushes filed a counterclaim alleging fraud and breach of contract for failure to pay benefits under the policy.[1] Farm Bureau asserted three affirmative defenses to the counterclaim: that the Bushes (1) caused the fire that destroyed the insured premises (arson); (2) intentionally misrepresented or concealed material *177 facts in their sworn proof of loss statement; and (3) made material misrepresentations of fact in the application for insurance concerning previous insurance loss and policy history.[2] The case went to trial on August 21, 1989. Following the selection of the jury, Farm Bureau filed a motion in limine, seeking an order preventing the presentation of any evidence pertaining to the defense that it had deleted from its complaint. This motion was granted by the trial judge.
The case proceeded to trial upon Farm Bureau’s claims of arson and misrepresentation after the loss, and upon the Bushes’ counterclaims alleging breach of contract, fraud, fraudulent and deceitful conduct, bad faith failure to pay an insurance claim, and outrage. (R.T. 911.)
At the close of Farm Bureau’s evidence, the Bushes filed a motion for a directed verdict as to the claims alleging arson and misrepresentation after the loss; it was denied by the trial court. Farm Bureau filed a motion for a directed verdict on all counts of its complaint and on the Bushes’ counterclaim. The trial court granted Farm Bureau’s motion for directed verdict solely on the Bushes’ claim alleging bad faith.
At the close of all the evidence, the Bushes again filed a motion for a directed verdict as to Farm Bureau’s claims of arson and misrepresentation after the loss; that motion was denied. Farm Bureau filed a motion for a directed verdict as to the claim of outrage, and it was granted.
Thus, the case went to the jury on two theories asserted by Farm Bureau, arson and misrepresentation in the proof of loss statement, and on the Bushes’ claims of breach of contract and fraudulent and deceitful conduct. (R.T. 1595.) The jury returned a general verdict in favor of Farm Bureau on both the complaint and the counterclaim. The Bushes filed a motion for JNOV or in the alternative for a new trial, which was denied by the trial court. This appeal followed.
I.
The first issue presented is whether the trial court erred in granting Farm Bureau’s motion in limine. Farm Bureau’s motion sought to prevent the offering of any evidence relating to the alleged misrepresentation in the Bushes’ application of insurance that Farm Bureau had deleted as a defense. In granting the motion in li-mine, the trial judge stated: “Well, the Court feels that the testimony regarding that would be confusing to the jury and would not add or take away from the case of each party and for that reason the motion is going to be granted. Let’s not have a mistrial by bringing this out.” (T.R. 57-58.) The Bushes now contend that such evidence constituted the basis of their claims and that the trial court’s order was a prohibitive, absolute order and was therefore in error.
We recognize that the trial court has broad discretion in evidentiary matters. The general rule was stated in State v. Askew, 455 So.2d 36 (Ala.Civ.App.1984), citing C. Gamble, The Motion in Limine: A Pretrial Procedure That Has Come of Age, 33 Ala.L.Rev. 1 (1981), as follows:
“In keeping with the vesting of broad discretion in the trial court in this area, it is generally held that the granting of a motion in limine can never be reversible error. The non-moving party may repeat at trial, preferably out of the hearing of the jury, his request for permission to prove the contested matter. This offer of proof is required in order to isolate the error for appeal. It is this refusal at trial to accept that proffered evidence, not the granting of the pretrial motion in limine, that serves as the basis for reversible error. Of course, this ability to bring up the matter a second time would not be available if counsel had requested and the judge had granted a prohibitive-absolute motion in limine.”
455 So.2d at 37 (Ala.Civ.App.1984). In Perry v. Brakefield, 534 So.2d 602, 607 (Ala. *178 1988), this Court cited Professor Gamble and stated: “The clear holding of these cases is that unless the trial court’s ruling on the motion in limine is absolute or unconditional, the ruling does not preserve the issue for appeal.” 534 So.2d at 606.
There is no evidence that the ruling on the motion in limine was absolute or unconditional. While the trial judge did warn counsel not to cause a mistrial, he did not prohibit counsel from making an offer of proof of the excluded evidence. The record does not reflect that counsel for the Bushes made an offer of proof of any excluded testimony during the course of the trial. We find no error on the part of the trial judge in granting the motion.
II.
The Bushes next contend that the trial court erred in allowing Tommy W. Shirley, a witness for Farm Bureau, to testify concerning the results of a test performed by Forensic and Scientific Testing Chemical Laboratory of Atlanta, Georgia, and to state his opinion, based thereon, as to the cause and origin of the fire. The Bushes contend that there was a break in the chain of custody of the debris samples from the fire that were tested by that laboratory. Shirley admitted that the samples of debris were shipped by United Parcel Service to the laboratory, not carried by him personally.
The Bushes cite Ex parte Williams, 548 So.2d 518, 520 (Ala.1989), a criminal case in which this Court stated that the reason for requiring that the chain of custody be shown is to establish to a reasonable probability that there has been no tampering with the evidence. However, Williams also states that the evidence need not negate the most remote possibility of substitution, alteration, or tampering with the evidence, but rather must prove to a reasonable probability that the item is the same as, and not substantially different from, the evidence as it existed at the beginning of the chain. 548 So.2d 518, 520.
In this case, Shirley testified at length as to the manner in which he collected, sealed, stored, and shipped the fire debris in paint cans via United Parcel Service; and he testified that his actions in this regard were standard procedure. Michael Byron, who worked at the laboratory in Atlanta, testified that he received these cans, properly sealed and labeled, from United Parcel Service. There is no evidence of any substitution, alteration, or tampering. The trial court did not err in allowing the testimony.
III.
The next issue is whether the trial court erred in directing a verdict for Farm Bureau and against the Bushes on their bad faith counterclaim at the close of Farm Bureau’s evidence. The Bushes argue that the directed verdict was premature, because they had not yet had an opportunity to present their case.
We outlined the elements that a plaintiff must prove in a bad faith case in National Security Fire & Casualty Co. v. Bowen, 417 So.2d 179, 183 (Ala.1982). These elements have been recited again in National Sav. Life Ins. Co. v. Dutton, 419 So.2d 1357, 1361 (Ala.1982), and Mueller v. Hartford Ins. Co. of Alabama, 475 So.2d 554, 556 (Ala.1985), and in other cases. One of these elements is “the absence of any reasonably legitimate or arguable reason for that refusal [to pay the claim] (the absence of a debatable reason).”
We have said that the plaintiff has a heavy burden in proving a bad faith nonpayment. “In short, plaintiff must go beyond a mere showing of nonpayment and prove a bad faith nonpayment, a nonpayment without any reasonable ground for dispute. Or, stated differently, the plaintiff must show that the insurance company had no legal or factual defense to the insurance claim.” National Sav. Life Ins. Co. v. Dutton, 419 So.2d 1357, 1361 (Ala.1982), quoting National Security Fire & Casualty Co. v. Bowen, 417 So.2d 179 (Ala.1982).
In this declaratory judgment action Farm Bureau proceeded first with its evidence, because of the nature of the action. The evidence before the trial court at the close of Farm Bureau’s evidence presented *179 a reasonably legitimate or arguable reason for the denial of the claim; thus the tort claim could not go to the jury. As we noted in National Sav. Life Ins. Co. v. Dutton, “Ordinarily, if the evidence produced by either side creates a fact issue with regard to the validity of the claim and, thus, the legitimacy of the denial thereof, the tort claim must fail and should not be submitted to the jury.” 419 So.2d 1357 at 1362. Therefore, the trial court did not err in directing a verdict against the Bushes as to the tort of bad faith.
IV.
The next issue is whether there was sufficient evidence on the defense of arson, as that defense related to the claims of both Keith and Bonnie Bush, to prevail against the Bushs’ motions for directed verdict, JNOV, and a new trial.
The evidence necessary to sustain the defense of arson has been described as follows:
“ ‘It is not necessary for the insurer to prove the defense of arson beyond all reasonable doubt, but a preponderance of the evidence suffices. Such proof may be made by circumstantial evidence, if the inferences are not too remote and all circumstances, including the inferences, are of sufficient force to bring minds of ordinary intelligence to a persuasion of incendiarism by a fair preponderance of the evidence. Appleman, Insurance Law and Practice § 12682, pp. 89-90. To sustain the defense of arson, the insurer, when relying on circumstantial proof, must present evidence which is so convincing that it will sustain no other reasonable hypothesis but that the plaintiff was responsible for the fire.’ ”
Great Southwest Fire Insurance Co. v. Stone, 402 So.2d 899, 900 (Ala.1981). In Great Southwest, we were quoting a statement from the brief of the insured. In Mueller v. Hartford Ins. Co., 475 So.2d 554, 557 (Ala.1985), we quoted that statement again and approved it as “a correct statement of the law.” The Bushes cite this language in an attempt to persuade this Court that the company must prove arson beyond a reasonable doubt. The Bushes are in error. An arson defense may be proven either by direct or by circumstantial evidence. Mueller v. Hartford Ins. Co. of Alabama, supra, at 557.
In order to establish a prima facie case of arson for the purpose of denying coverage under a fire policy, the insurance company must present (1) evidence of arson by someone, (2) evidence of motive on the part of the insured, and (3) evidence implicating the insured. Great Southwest Fire Ins. Co. v. Stone, supra, at 900. We have carefully read the record and we find sufficient evidence to support the jury’s verdict for Farm Bureau on the arson defense as to both Bonnie and Keith Bush.
A fire was observed at the Bush’s house on April 25, 1986, at approximately 7:30 p.m. Keith and Bonnie Bush were the last persons known to leave this house prior to the observation of the fire by neighbors. They had left the house at 7:00 p.m. to stay all night with friends in Prattville, taking their dog with them. This was the fourth fire at the house that day. The first two fires originated in the area of the kitchen cabinet, beneath the countertop range, and caused minor damage. The third fire was in the attic, directly above the kitchen cabinet area. The fourth fire completely destroyed the house.
The first fire was not reported by Keith Bush, but was reported by employees of a local welding business, P & B Welding, who observed smoke coming from the Bush house and ran over there. Jack Matthew Holly, Jr., testified that he and three other employees noticed smoke coming out of the eaves. He said that they went up to the house and that he observed Keith Bush throwing things out of the windows. There was thick smoke in the house. The others from P & B Welding took water from the pool and put out the fire, which was in a cabinet underneath the range. Holly said he did not see any flames.
Holly testified that an hour or two later the P & B employees noticed smoke again, coming from the same house. He said they again took water from the pool and pulled *180 out a portion of the countertop. He said that later in the morning they observed smoke again and returned to the Bush house, carrying fire extinguishers, and went up into the attic and put out the flames. Holly testified that he kicked a hole in the kitchen ceiling and poured 8 to 10 five-gallon buckets of water on the wall.
Holly went again to the house when Mrs. Bush came to P & B Welding seeking a flashlight. He found Mr. Bush in a closet. He was unable to say exactly what Bush was doing in the closet. Bush told him that he was ashamed to call the fire department again, and that he had it under control.
Tommy Shirley, a cause and origin, expert from Special Investigation and Consultant Services of Alabama, Inc., and formerly a state deputy fire marshal, testified that his company was hired to conduct an origin and cause determination. Shirley testified that his investigation revealed burn patterns and evidence of “spalling,” a chipping that occurs when excessive or extreme heat is applied to the surface of concrete. He found three lines of spalling radiating from the foyer — one extending out across the den, the other straight across the foyer, and the other one extending out toward the kitchen. He testified that such spalling is indicative of an accel-erant or combustible liquid being poured across the floor and that he knew of nothing that would cause that type of spalling pattern except an accelerant. He took samples from each line of spalling. It was Shirley’s opinion that the fire that destroyed the house originated in the foyer of the house and was caused by the ignition of gasoline.
Shirley stated that he was able to eliminate any accidental or natural electrical cause of this fire. Tom Parsons, an electrician who went to the house on the afternoon of the fires, testified that the wiring and associated junction box and equipment were not involved in causing the fires.
Michael Byron, who was employed by Forensic and Scientific Testing Chemical Laboratory in Atlanta, Georgia, and who had been a forensic chemist for seven years, testified that he tested four samples of debris collected by Shirley, using the gas chromatograph test. The sample from the foyer revealed burned gasoline; the other three samples were negative.
Rodney Brown, a special investigator for Farm Bureau, testified as to the bases relied on by the insurance company in its refusal to pay the claim. He said that his file showed that there had been four fires in all at the Bush house that day. He stated that he interviewed 22 people who had been witnesses at the various fires, including Robert Harell, Sheriff Huelett, Tom Parsons, and Bo Riley. In the course of his investigation, Brown taped a statement of Stephanie Brooks, a 16-year-old neighbor of the Bushes, in the presence of her father. The tape was played for the jury. Stephanie said that she was at the Bush house prior to the Bushes’ leaving for Prattville. She said that Keith Bush took baby pictures, baby clothes, suits, and scrapbooks out of the house and put them in his truck and his shop. She said that Bonnie Bush took school yearbooks. Stephanie said that Bonnie Bush gave her a number to call in case the house caught on fire again and told her to call if she heard or saw anything.
The record reflects that at the time of the loss the Bushes were having financial trouble. Keith Bush was self-employed and had owned a used car dealership for a year. Prior to this he had been a salesman, with an annual salary of $35,000. At the time of the fire loss, there were three mortgages of record on the house. The first secured a debt of $25,000; the second secured a debt of $4,000; and the third secured a $20,000 line of credit with an outstanding balance of $14,000. The Bushes had an income of approximately $1,800 per month, and their bills were approximately $1,800 per month.
The Bushes gave a sworn proof-of-loss inventory to Farm Bureau. In their statement, they claimed to have purchased over $20,000 worth of items in the past year. There is ample evidence that the inventory they submitted was grossly inflated. For *181 example they claimed $750 for 55 stuffed animals. Stephanie Brooks testified that the Bushes’ teen-aged daughter had had the stuffed animals since she was a child. In addition, they listed 5 new business suits (although Keith Bush does not wear suits to work), 8 nightgowns, and 18 pairs of ladies’ shoes. A month prior to the fire loss, Keith and Bonnie Bush had been made defendants in a lawsuit claiming $50,-000 in damages. Because they could not afford a lawyer, they filed an answer pro se.
Rodney Brown, Farm Bureau s special investigator, testified that the decision to deny the claim was based upon his own investigation, Shirley’s investigation, and Byron’s report.
V.
The Bushes next claim that the court erred in its oral charge to the jury. They argue that the trial judge confused the jury in stating Farm Bureau’s burden of proof regarding misrepresentation. The record reflects that after the trial judge finished charging the jury, several possible misstatements were called to his attention. He asked counsel for charges to “clean up” the matter.
The trial judge then recharged the jury and asked, “Anything else?” Counsel for the Bushes replied, “No, your honor.” Therefore, the oral charge is not reviewable by this Court, because no objection was made. Rule 51, A.R.Civ.P.
For the reasons stated above, the judgment based on the jury verdict for Farm Bureau is due to be affirmed.
AFFIRMED.
HORNSBY, C.J., and HOUSTON, STEAGALL and KENNEDY, JJ., concur.

. The case also went to the jury on a claim alleging fraudulent and deceitful conduct on the part of Farm Bureau in the handling of the Bushes’ claim. The claim had not been asserted by the Bushes in their counterclaim, but was allowed by the trial court.

. Before the trial of the case, Farm Bureau deleted this affirmative defense that it had raised to the Bushes’ counterclaim.