MOORE, Judge.
Timothy Leon Blakley and his wife, Angela Machelle Blakley, appeal from a judgment entered on a jury verdict in favor of Terrence Maurice Johnson and M & M Trucking, Inc. We affirm.

Procedural Background

On September 26, 2008, the Blakleys sued Johnson and Johnson’s employer, M & M Trucking, asserting claims of negligence and wantonness.[1] The Blakleys’ claims were based on injuries sustained by Timothy in a May 11, 2007, motor-vehicle accident involving Timothy, who was driving a logging truck, Johnson, who was driving a tanker truck, and a “green car” that left the scene of the accident. The Blakleys sought compensatory and punitive damages; they also demanded a jury trial. Johnson and M & M Trucking answered the complaint, denying all claims for relief and asserting various affirmative defenses, including contributory negligence.
*253 On August 26, 2009, the case was tried before a jury. At the close of the Blak-leys’ case-in-chief and again at the close of all the evidence, Johnson and M & M Trucking moved for a judgment as a matter of law (“JML”). The trial court denied the motion as to the negligence claim, but it subsequently indicated that it would not submit the Blakleys’ wantonness claim to the jury.
At the close of all the evidence, the Blakleys moved for a JML in their favor. They relied on their previously filed written motion for a JML. The trial court denied the Blakleys’ motion. At that same time, the Blakleys objected to certain of the trial court’s jury instructions.
On August 27, 2009, the jury returned a verdict in favor of Johnson and M & M Trucking, and, on that same date, the trial court entered a judgment on that verdict. On September 23, 2009, the Blakleys moved for a new trial. See Rule 59, Ala. R. Civ. P. After a November 13, 2009, hearing, the trial court denied the Blak-leys’ postjudgment motion on that same date.
The Blakleys timely appealed to the Alabama Supreme Court. That court transferred the appeal to this court, pursuant to Ala.Code 1975, § 12-2-7(6).

Evidentiary Background

State Trooper Dewayne Allums was an eyewitness to the accident in question. He testified that, on May 11, 2007, he was driving south on Interstate Highway 65 (“1-65”) in Chilton County when he saw a stranded vehicle on the side of the highway. Another driver had pulled over to assist the first driver. Allums turned on his blue lights and parked his patrol unit on the shoulder of the roadway approximately 70 feet behind the two vehicles; Allums testified that, based on his training as a state trooper, he had parked his vehicle behind the stranded motorist and close to the roadway to provide a buffer between the stranded motorist and oncoming traffic. Allums testified that his vehicle was parked on the shoulder of the road but was positioned so close to the road that the side-view mirror on his driver’s door extended over the white line and into the roadway. Allums waited in his patrol car while the motorists attended to the disabled vehicle.
While in his patrol car, Allums observed traffic and the surrounding conditions. According to Allums, traffic was light to medium. He observed cars, pickup trucks, “SUVs,” and commercial vehicles passing his patrol unit in the right lane of the highway. Allums also testified that the vision in his rear-view mirror was clear for at least one-half mile.
Allums testified that he observed a tanker truck approaching his parked patrol car in the right lane of 1-65. When Allums first observed the tanker truck, it was approximately one-half mile away. Allums testified that the tanker truck slowed to 5 to 10 miles per hour and that the driver would “stop, roll forward, stop, roll forward. And during that time, [the driver] eventually put his left turn signal on.” Allums estimated that the tanker truck was approximately 20 feet behind his patrol car when the driver of the tanker truck activated the left-turn signal. Although unknown to Allums at that time, Johnson was driving the tanker truck.
Allums testified that he also saw a green car, which Allums described as an olive-green Cadillac, traveling very slowly in the left-hand lane; Allums estimated that the green car was traveling at a rate of 5 to 10 miles per hour.[2] Allums also saw a log *254 ging truck, driven by Timothy, behind the green car but “further on down the road.” Allums estimated that the logging truck was moving at approximately 30 to 35 miles per hour.
According to Allums, the tanker truck attempted to change from the right lane to the left lane. Allums testified that the tanker truck did not completely cross into the left lane but that it did cross the center line. Allums testified that both the tanker truck and the green car had been moving at a very slow speed, so the driver of the green car had not had to “slam on its brakes” when the tanker truck attempted to change lanes. Allums also testified that, at the time the tanker truck attempted to change lanes, the logging truck was approximately 100 to 200 feet behind the green car and was traveling less than 30 miles per hour. Allums then testified:
“I could see the log truck coming. The log truck, in my opinion, was going to run over the [green car]. So that driver, he made an evasive maneuver. He went off into the median to the left. As he went off into the median to the left, it appeared he was going to come back on smoothly. But all of a sudden, the log truck just overturned. It overturned on the driver’s side. Logs were everywhere.”
Allums also testified that he could tell that Timothy was reducing the speed of the logging truck, presumably referring to the point in time that the logging truck was approaching the green car or approaching Allums’s parked patrol car, but that he could not tell if Timothy was braking or if he was simply no longer accelerating. Al-lums also testified that, in his opinion, the tanker truck could have passed his patrol car safely without changing from the right lane to the left lane of the highway.
Timothy testified that, on the day in question, he was pulling a load of logs in the right lane of 1-65. A green car was traveling in front of him. Timothy heard over the “CB” radio that a state trooper and a disabled vehicle were on the side of the highway ahead of him. When the state trooper’s patrol car came into view in the distance, Timothy moved his truck into the left lane. Timothy testified that, at that time, he was traveling approximately 65 miles per hour. He also recalled seeing a tanker truck ahead of him in the right lane. According to Timothy, the tanker truck was virtually sitting still.
Timothy testified that he began slowing the speed of the logging truck when the green car ahead of him merged over from the right lane into the left lane in front of him. Timothy estimated that, at that point, his logging truck was traveling “maybe fifty [miles per hour].” Timothy recalled being a few truck lengths behind the green car, but, according to Timothy’s testimony on cross-examination, the green car’s rate of speed was faster than that of his logging truck.[3] Timothy testified that, as his logging truck and the green car came up to the tanker truck, the tanker truck “come over in front of us”; he also testified that the green car was “real close to the rear tandem of the tanker’s trailer.”[4] According to Timothy, the tanker *255 truck came over into the left lane and immediately went back into the right lane. He testified that Johnson never signaled before moving into the left lane. Timothy testified that he realized he was going to hit the green car so he drove the logging truck into the median, where it overturned.
Timothy walked away from the accident and initially refused to go to the emergency room. According to medical records, however, he subsequently began experiencing pain and went to the emergency room approximately seven hours after the accident. Timothy ultimately underwent surgery on his neck and his shoulder. Timothy’s injuries and medical treatment were covered under the Alabama Workers’ Compensation Act, Ala.Code 1975, § 25-5-1 et seq. At the trial, Timothy acknowledged that his memory had been affected as a result of the accident.
Marissa Lee, who witnessed the accident, testified that she was following the logging truck being driven by Timothy on the day of the accident. She and Timothy were in the left lane of 1-65 and were approaching the state trooper’s patrol car, which was parked on the right shoulder of the highway. She observed the tanker truck in the right lane. Lee testified that, as she and the logging truck approached the patrol car, she noticed that the tanker truck “swung over into the left-hand lane abruptly. The next thing I noticed was the log truck had put on his brakes and then veered off the road and flipped.” Lee denied noticing rates of speed, whether the tanker truck signaled before moving toward the left lane, or seeing any vehicle in front of the logging truck. In her opinion, however, the tanker truck had attempted to make a sudden movement into the left lane.
Johnson, the driver of the tanker truck, testified that he had been traveling in the right lane of traffic at the posted speed limit and that, when he saw the state trooper’s patrol car, he had slowed his speed, eventually reaching approximately five miles per hour. He testified that, upon seeing the state trooper’s patrol car parked on the shoulder of the highway, he activated his left-turn signal because he did not believe that he could pass the trooper’s patrol car in the right lane. Johnson claimed that he checked his rear-view mirror, that he saw a green car in the left lane a small distance behind him, and that he had clearance to cross over into the left lane in front of the green car. According to Johnson, the driver of the green car had flashed the car’s lights at him, indicating to Johnson that he could proceed in front of it. Johnson testified that he crossed over the center line and into the left lane only enough to drive around the patrol car and then moved back into the right lane. Johnson then saw in his rear-view mirror that the logging truck had driven into the median of the highway and had overturned.

Whether the Trial Court Erred to Reversal in Denying the Blakleys’ Motion for a JML

The Blakleys argue that the trial court erred in denying their motion for a JML.
“In Delchamps, Inc. v. Bryant, 738 So.2d 824 (Ala.1999), our supreme court explained the standard of review applicable to a trial court’s ruling on a motion for a judgment as a matter of law:
“ ‘When reviewing a ruling on a motion for a [judgment as a matter of law (“JML”) ], this Court uses the same standard the trial court used initially in granting or denying a JML. Palm Harbor Homes, Inc. v. Crawford, 689 So.2d 3 (Ala.1997). Regarding questions of fact, the ultimate question, is whether the nonmovant *256 has presented sufficient evidence to allow the case or the issue to be submitted to the jury for a factual resolution. Carter v. Henderson, 598 So.2d 1350 (Ala.1992). For actions filed after June 11, 1987, the nonmovant must present “substantial evidence” in order to withstand a motion for a JML. See § 12-21-12, Ala.Code 1975; West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989). A reviewing court must determine whether the party who bears the burden of proof has produced substantial evidence creating a factual dispute requiring resolution by the jury. Carter, 598 So.2d at 1353. In reviewing a ruling on a motion for a JML, this Court views the evidence in the light most favorable to the nonmovant and entertains such reasonable inferences as the jury would have been free to draw. Motion Industries, Inc. v. Pate, 678 So.2d 724 (Ala.1996). Regarding a question of law, however, this Court indulges no presumption of correctness as to the trial court’s ruling. Ricwil, Inc. v. S.L. Pappas & Co., 599 So.2d 1126 (Ala.1992).’
“738 So.2d at 830-31.”
Leonard v. Cunningham, 4 So.3d 1181, 1184 (Ala.Civ.App.2008). Using this standard of review, we review the Blakleys’ negligence claim to determine if it was properly submitted to the jury for resolution.
“The elements of a negligence claim are a duty, a breach of that duty, causation, and damage.” Armstrong Bus. Servs., Inc. v. AmSouth Bank, 817 So.2d 665, 679 (Ala.2001). Although the Blakleys argue that they presented “reliable/uncontrovert-ed/material” evidence to the trial court in support of their negligence claim, the record establishes that the evidence presented as to the elements of breach of duty and causation was disputed.
For example, the parties presented conflicting evidence as to whether Johnson’s decision to merge into the left lane and his subsequent attempt to do so were reasonable based on the conditions present on the day of the accident. Timothy testified that, as a result of Johnson’s abrupt lane change, Timothy was forced to drive his logging truck into the median, where it overturned. Johnson, however, testified to the steps he took to ascertain that he could safely change lanes before merging into the left lane and that, in his opinion, it had been safe to merge into the left lane and that he did so to avoid the patrol car and the stranded motorists parked on the shoulder of the highway.
The trial court also heard conflicting evidence regarding whether the affirmative defense of contributory negligence barred any recovery by Timothy, even if Johnson had, in fact, acted negligently in executing the lane change. Johnson presented evidence from which reasonable persons could have concluded that, given the conditions present on the day of the accident, Timothy had operated the logging truck at an unsafe speed or had followed the green car too closely. Conversely, Timothy testified that he had operated his logging truck appropriately and safely but that, as a result of Johnson’s abrupt lane change, he had been forced to choose between colliding with the green car or driving his logging truck into the median of the highway.
Thus, the trial court was presented with conflicting evidence as to whether Johnson breached a duty owed to Timothy and whether Timothy’s actions amounted to contributory negligence. “ ‘ “A [judgment as a matter of law] is proper (1) where the nonmoving party has failed to present substantial evidence regarding some element *257 essential to [his or] her claim, or (2) where there is no disputed issue of fact upon which reasonable persons could differ. Rule 50(a), Ala. R. Civ. P.” ’ ” Robertson v. Gaddy Elec. & Plumbing, LLC, 53 So.3d 75, 80 (Ala.2010) (quoting Spence v. Southern, Pine Elec. Coop., 643 So.2d 970, 971 (Ala.1994), quoting in turn Teague v. Adams, 638 So.2d 836, 837 (Ala.1994)). Because disputed issues of fact remained as to the Blakleys’ claim of negligence, the trial court properly denied the Blakleys’ motion for a JML and submitted that claim for the jury’s resolution.
The Blakleys also argue that Johnson’s lane change amounted to a violation of Ala.Code 1975, § 32-5A-88, and, thus, constituted negligence as a matter of law, i.e., negligence per se. Section 32-5A-88(l) provides that “[a] vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety.”[5] Because, the Blakleys argue, Johnson violated a traffic statute, his improper-lane-change violation amounted to negligence per se and, thus, the trial court erred in denying their motion for a JML as to liability on the negligence claim.
The Blakleys, however, failed to specifically argue to the trial court at the close of all the evidence that a JML should be entered in their favor on the basis that the evidence established negligence per se.[6] “A party must make a motion for a directed verdict [now a JML] in order to be entitled to a judgment notwithstanding the verdict [now a postverdict JML]. A motion for a judgment [notwithstanding the verdict] without having moved for a directed verdict at the proper time will be denied.” Committee Comments on 1973 Adoption of Rule 50, Ala. R. Civ. P. That issue, therefore, has been waived for appellate review.[7] Out of an abundance of caution, however, we consider the merits of this claim and conclude that the trial court did not err in denying the Blakleys’ motion for a JML on the basis of negligence per se.
In Consolidated Freightways, Inc. v. Pacheco-Rivera, 524 So.2d 346 (Ala.1988), the executrix of her husband’s estate brought an action for damages against an employee of Consolidated Freightways as a result of an automobile accident caused when the employee was driving on the wrong side of the highway. The executrix alleged that the employee had violated the Alabama Rules of the Road Act, Ala.Code 1975, § 32-5A-1 et seq., more specifically, § 32-5A-88, by driving in the improper lane. Evidence indicated that the automobile in which the husband and the executrix had been traveling had been in the proper lane at the time of the accident. The executrix argued that the trial court had erred when it failed to charge the jury *258 that a violation of the Alabama Rules of the Road Act establish negligence per se.
On appeal, our supreme court affirmed the trial court’s jury charges. Id. at 350. The supreme court stated: “[Wjhere the applicable Rule of the Road requires a judgment to be made on the part of the driver, the reasonable man standard applies and a violation of the statute is not negligence per se. The statute provides that a driver should not move from a lane ‘until [he or she] has first ascertained that such movement can be made with safety.’ ” Consolidated Freightways, 524 So.2d at 350 (quoting Ala.Code 1975, § 32-5A-88(1)).
In this case, we have already concluded that the evidence at trial was disputed as to whether Johnson acted reasonably in deciding to change lanes to avoid the state trooper’s patrol car and the stranded motorists; we have also concluded that the evidence was disputed as to whether Johnson acted reasonably in the manner in which he executed the lane change. Thus, Johnson was required to make a subjective judgment as to whether he could safely move his tanker truck into the left lane. As a result, any negligence by Johnson in his decision could amount to only simple negligence and not negligence per se. Consolidated Freightways, 524 So.2d at 350. Therefore, the trial court did not err in denying the Blakleys’ motion for a JML as to liability on the basis of negligence per se.

Whether the Trial Court Erred in Failing to Submit the Wantonness Claim to the Jury

The Blakleys next argue that the trial court erred in refusing to submit their wantonness claim to the jury or, stated differently, that the trial court erred in entering sua sponte a JML in favor of Johnson and M & M Trucking as to the Blakleys’ wantonness claim. We find no merit in the Blakleys’ argument.
First, we note that our supreme court has affirmed a trial court’s sua sponte entry of a directed verdict, now referred to as a judgment as a matter of law (see Rule 50, Ala. R. Civ. P.). See Foster v. Life Ins. of Georgia, 656 So.2d 333, 334-36 (Ala.1994) (affirming a directed verdict entered sua sponte in favor of the plaintiff as to an affirmative defense asserted by the defendant because the defendant presented insufficient evidence to warrant submitting that defense for the jury’s consideration). Thus, to the extent the Blakleys argue that the trial court improperly granted relief that had not been sought, we find no merit in that argument.
Additionally,
“ ‘[w]antonness is a question of fact for a jury, unless there is a total lack of evidence from which the jury could reasonably infer wantonness. “Wantonness” is ... the conscious doing of some act or the omission of some duty while knowing of the existing conditions and being conscious that, from doing or omitting to do an act, injury will likely or probably result.’ ”
Allen v. Hill, 758 So.2d 574, 576 (Ala.Civ.App.1999) (quoting McDougle v. Shaddrix, 534 So.2d 228, 231 (Ala.1988)). See also Ala.Code 1975, § 6 — 11—20(b)(3) (defining “wantonness” as “[c]onduct which is carried on with a reckless or conscious disregard of the rights or safety of others”). “The ‘knowledge’ [of risk of injury] of the defendant is ‘the sine qua non of wantonness.’ ” Norris v. City of Montgomery, 821 So.2d 149, 156 n. 9 (Ala.2001) (quoting Ricketts v. Norfolk Southern Ry., 686 So.2d 1100, 1106 (Ala.1996), quoting in turn Henderson v. Alabama Power Co., 627 So.2d 878, 882 (Ala.1993)).
*259 We find no evidence to support an inference that Johnson acted with the “conscious culpability” required to support a claim of wantonness. See, e.g., Lynn Strickland Sales & Serv., Inc. v. Aero-Lane Fabricators, Inc., 510 So.2d 142 (Ala.1987) (referring to the “conscious culpability” required to support a claim of wantonness). The undisputed evidence established that Johnson saw the state trooper’s flashing lights and slowed the tanker truck’s speed to five miles per hour or less. The evidence also established that Johnson attempted to merge into the left lane because he did not believe he could safely pass the trooper’s patrol car that was on the right shoulder of the highway. Although the evidence was disputed as to whether Johnson safely executed a merger into the left lane and as to whether he signaled his intent to enter the left lane, there was no evidence to dispute Johnson’s testimony that he watched the traffic for a clear opportunity to change lanes or to dispute that the driver of the green car signaled by flashing the vehicle’s lights for Johnson to merge into the left lane.
Based upon that evidence, we agree with the trial court that there was a “total lack of evidence from which the jury could reasonably infer wantonness” such that the Blakleys’ claim of wantonness presented no issue for the jury’s consideration. Allen v. Hill, 758 So.2d at 576. We, therefore, affirm the JML entered in favor of Johnson and M & M Trucking as to the Blakleys’ claim of wantonness.

Whether the Trial Court Erred in Denying the Blakleys’ Motion for a New Trial

The Blakleys also argue that the trial court erred in denying their motion for a new trial. “A jury’s verdict is presumed correct and will not be disturbed unless it is plainly erroneous or manifestly unjust.” Crown Life Ins. Co. v. Smith, 657 So.2d 821, 822 (Ala.1994). “[T]hat presumption is strengthened when the trial court has denied a motion for a new trial.” SouthTrust Bank v. Donely, 925 So.2d 984, 948 (Ala.2005) (citing First Alabama Bank of South Baldwin v. Prudential Life Ins. Co. of America, 619 So.2d 1313 (Ala.1993)). A judgment based upon a jury verdict and sustained by the denial of a postjudgment motion for a new trial will not be reversed unless it is plainly and palpably wrong. National Sec. Ins. Co. v. Donaldson, 664 So.2d 871 (Ala.1995).
In arguing that the trial court erred in denying their motion for a new trial, the Blakleys argue that the verdict was against the great weight of the evidence, they challenge certain of the trial court’s evidentiary rulings and jury instructions, and they assert that the trial court made improper comments to the jury.
In Richardson v. Joines, 574 So.2d 787 (Ala.1991), our supreme court stated that “the trial court is left with no discretion to grant a new trial on a “weight of the evidence’ ground, except when the verdict and the judgment entered thereon are so against the great weight and preponderance of the evidence as to be ‘plainly and palpably’ wrong, i.e., ‘manifestly unjust.’ ” Richardson, 574 So.2d at 788. Additionally, we must “review the evidence in the light most favorable to the prevailing party and must indulge all reasonable inferences that the jury was free to draw.” Floyd v. Broughton, 664 So.2d 897, 900 (Ala.1995). “[N]o ground for granting a new trial will be more carefully scrutinized or more rigidly limited than that the verdict is contrary to the weight of the evidence.” Delchamps, Inc. v. Larry, 613 So.2d 1235, 1239 (Ala.1992).
We previously have concluded that the trial court did not err in denying the Blak-leys’ motion for a JML as to their negligence claim, i.e., that the trial court cor *260 rectly found disputed issues of material fact sufficient to submit the negligence claim for the jury’s consideration. Because reasonable inferences drawn from the disputed evidence support the jury’s verdict in favor of Johnson and M & M Trucking, the trial court did not err in denying the Blakleys’ motion for a new trial on the ground that the verdict was against the great weight of the evidence. See, e.g., Syx v. Button, 894 So.2d 715 (Ala.Civ.App.2004) (evidence was sufficient to support jury’s verdict for defendant in negligence action arising from automobile accident, and trial court erred in granting new trial on the ground that the jury’s verdict was against great weight of evidence).
The Blakleys also argue that the trial court’s evidentiary rulings rose to the level of reversible error, justifying a new trial. The Blakleys first challenge the trial court’s ruling on Johnson and M & M Trucking’s motion in limine, excluding at the trial all evidence relating to a traffic citation purportedly received by Johnson for an “improper lane change.”[8] We find no reversible error.
In Bush v. Alabama Farm Bureau Mutual Casualty Insurance Co., 576 So.2d 175 (Ala.1991), the trial court granted Farm Bureau’s motion in limine and prohibited the Bushes, the insureds, from presenting any evidence pertaining to certain affirmative defenses Farm Bureau previously had asserted to the Bushes’ counterclaim. Id. at 178. After the trial court entered a judgment on the jury’s verdict in favor of Farm Bureau, the Bushes appealed, arguing that the trial court had erred in granting Farm Bureau’s motion in li-mine. Id.
On appeal, the Bushes argued that the prohibited evidence constituted the basis of their claims at trial and that the trial court’s order had been a “prohibitive, absolute order.” Id. at 177. Our supreme court affirmed the trial court’s evidentiary ruling and stated:
“We recognize that the trial court has broad discretion in evidentiary matters. The general rule was stated in State v. Askew, 455 So.2d 36 (Ala.Civ.App.1984), citing C. Gamble, The Motion in Li-mine: A Pretrial Procedure That Has Come of Age, 33 Ala. L.Rev. 1 (1981), as follows:
“ ‘In keeping with the vesting of broad discretion in the trial court in this area, it is generally held that the granting of a motion in limine can never be reversible error. The non-moving party may repeat at trial, preferably out of the hearing of the jury, his request for permission to prove the contested matter. This offer of proof is required in order to isolate the error for appeal. It is this refusal at trial to accept that proffered evidence, not the granting of the pretrial motion in limine, that serves as the basis for reversible error. Of course, this ability to bring up the matter a second time would not be available if counsel had requested and the judge had granted a prohibitive-absolute motion in limine.’
“455 So.2d at 37 (Ala.Civ.App.1984). In Perry v. Brakefield, 534 So.2d 602, 607 (Ala.1988), this Court cited Professor Gamble and stated: ‘The clear holding of these cases is that unless the trial court’s ruling on the motion in limine is absolute or unconditional, the ruling does not preserve the issue for appeal.’ 534 So.2d at 606.”
576 So.2d at 177-78. The supreme court in Bush concluded that, because the trial *261 court had not precluded counsel for the Bushes from making an offer of proof of the excluded evidence at trial, the trial court’s ruling on the motion in limine had not been absolute or unconditional. Id. at 178. The court further concluded that, because the record did not reflect an offer of proof by the Bushes at trial concerning the excluded evidence, the Bushes had failed to preserve the error for appellate review. Id. See also Simmons v. Peacock, 636 So.2d 452 (Ala.Civ.App.1994) (whether trial court erred in granting motion in limine was not preserved for appellate review when it did not appear from the record that the trial court’s ruling was absolute or unconditional and the record did not establish that an offer of proof had been made).
In this case, the trial court granted the motion in limine filed by Johnson and M & M Trucking and directed the Blakleys’ counsel not to inquire about the traffic citation at trial. As in Bush, supra, there is no evidence indicating that the ruling on that motion was absolute or unconditional or that the trial court prohibited the Blak-leys’ counsel from making an offer of proof regarding that evidence. Thus, in order to preserve any error in the trial court’s evi-dentiary ruling, the Blakleys were required to make an offer of proof regarding the excluded evidence. We find no such offer of proof in the record. Thus, the Blakleys have not preserved this argument for appellate review and we need not address it. Bush, supra; and Simmons, supra.
The Blakleys also argue that the trial court erred in sustaining an objection to questions asked by their attorney of State Trooper Allums as to whether he believed Johnson had violated the Alabama Rules of the Road Act on the day of the accident. We need not address this issue because the Blakleys failed to make an offer of proof as to Allums’s expected response and his answer was not apparent from the context of the question. Thus, any error presented by the trial court’s ruling was not preserved for appellate review. See Rule 103(a)(2), Ala. R. Evid. (recognizing that error may not be predicated upon a ruling excluding evidence unless a substantial right of the party is affected and the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked); and II Charles W. Gamble and Robert J. Goodwin, McElroy’s Alabama Evidence § 425.01(4) (6th ed. 2009) (“If the trial court sustains an objection made to a question which does not on its face show what is the expected answer, it then becomes the duty of the questioning party, in order to predicate review upon this as an erroneous ruling, to make an offer of proof.”).
The Blakleys next argue that they are entitled to a new trial because the trial court erred by failing to instruct the jury that it was the “sole judge of the facts” presented during the trial.
“ ‘ “In a jury case, a party is entitled to have its case tried to a jury that is given the appropriate standard by which to reach its decision, and a wrongful refusal of a requested jury charge constitutes a ground for a new trial. See, C.I.T. Financial Services, Inc. v. Bowler, 537 So.2d 4 (Ala.1988). An incorrect, misleading, erroneous, or prejudicial charge may form the basis for granting a new trial. See, Nunn v. Whitworth, 545 So.2d 766 (Ala.1989). However, the refusal of a requested, written instruction, although a correct statement of the law, is not cause for reversal on appeal if it appears that the same rule of law was substantially and fairly given to the jury in the trial court’s oral charge. *262 See, Rule 51, Ala. R. Civ. P. When examining a charge asserted to be erroneous, this Court looks to the entirety of the charge to see if there is reversible error. See, Grayco Resources, Inc. v. Poole, 500 So.2d 1030 (Ala.1986).” ’
“Cackowski v. Wal-Mart Stores, Inc., 767 So.2d 319, 327 (Ala.2000) (quoting Shoals Ford, Inc. v. Clardy, 588 So.2d 879, 883 (Ala.1991)). Additionally, ‘[a]ny error or defect which does not affect the substantial rights of the parties may be disregarded.’ Bishop v. State Auto. Mut Ins. Co., 600 So.2d 262, 265 (Ala.Civ.App.1991) (citing Rule 61, Ala. R. Civ.App.). As a result, the jury instruction must be erroneous as well as prejudicial, and this Court cannot presume prejudice. Brabner v. Canton, 611 So.2d 1016, 1018 (Ala.1992). Preferred, Risk Mut. Ins. Co. v. Ryan, 589 So.2d 165, 167 (Ala.1991). The appellant has the burden of demonstrating that an erroneous jury instruction was prejudicial. See Ryan, 589 So.2d at 167 (citing Dinmark v. Farrier, 510 So.2d 819 (Ala.1987)).”
Southeast Envtl. Infrastructures, L.L.C. v. Rivers, 12 So.3d 32, 43-44 (Ala.2008).
We find no merit in the Blakleys’ argument that the trial court erred by failing to instruct the jury that it was the “sole judge of the facts.” Although the Blakleys never submitted a proposed jury instruction to the trial court requesting such an instruction, the trial court’s instructions, when viewed in their entirety, establish that the instructions given were adequate.
In its instructions to the jury, the trial court repeatedly instructed the jurors that it was within their “province alone” to resolve disputed evidence and to accept or reject any or all of a witness’s testimony. The trial court also instructed the jurors that they were the “sole judges” of the amount of damages to be assessed in the event they found Johnson and M & M Trucking liable to the Blakleys. The trial court repeatedly referred to the jurors’ ability to evaluate, during their deliberations, the facts and testimony presented at the trial. Thus, we conclude that the trial court’s instructions, as a whole, did not rise to reversible error on the issue asserted.
The Blakleys also argue that the trial court improperly instructed the jury on the burden of proof applicable in this case by stating to the jury at the beginning of the trial: “I would suggest that you [the jurors] hold their [the lawyers’] feet to the fire because if they [the lawyers] tell you they can prove something, make them do it.” The Blakleys, however, failed to lodge an objection to the trial judge’s statement, and, thus, any error as to this statement by the trial judge is deemed waived. See Beiersdoerfer v. Hilb, Rogal & Hamilton Co., 953 So.2d 1196, 1207 (Ala.2006), and note 6, supra. Further, although we find nothing improper or prejudicial in the statement, to the extent the trial judge’s statement could be considered improper, the Blakleys have not assigned as error the trial court’s subsequent charge to the jury, in which the trial court addressed the burden of proof. Thus, the trial court’s subsequent instructions are deemed adequate and no reversible error is presented. See Southeast Envtl. Infrastructures, supra (when the jury charge, in its entirety, is appropriate and in compliance with the law, no reversible error is presented).
The Blakleys also assert that, at the trial, the trial judge improperly commented upon the evidence and that such comments improperly influenced the jury’s analysis of the evidence.
*263 “[A] trial judge may not express an opinion on the weight and effect of the evidence in a jury trial. ... Not all statements by the trial court fall into this category, however. When ... the statements by the trial court are made to counsel and are made in ruling on an objection or in explaining a ruling on an objection, the statements will not be considered improper comments on the evidence except in extreme cases.”
Keller v. American Med. Int’l, Inc., 534 So.2d 244, 245 (Ala.1988).
In Bryant v. State, 727 So.2d 870 (Ala.Crim.App.1998), the Alabama Court of Criminal Appeals stated:
“ ‘ “The law does not prohibit the trial judge from giving trial counsel his reasons in making certain rulings as to the law applicable to the case.... Bedingfield v. State, [47 Ala.App. 677, 681, 260 So.2d 408, 412 (1972) ].
“ ‘ “In 23 C.J.S., Criminal Law § 993, p. 1024, it is said, ‘Generally, it is not improper comment on the evidence for the judge to explain his ruling on a matter of law, and he may refer to testimony and state its legal effect, in deciding a point raised during trial.’ ” ’ ”
727 So.2d at 874 (quoting Hampton v. State, 620 So.2d 99, 103 (Ala.Crim.App.1992), quoting in turn McDonald v. State, 340 So.2d 80, 83 (Ala.Crim.App.1976)).
The Blakleys complain that the trial judge commented, in ruling on an objection: “I don’t remember it that way. I sustain the objection.” The Blakleys also complain that, in response to their attorney’s statement that he was “offended” by a statement made by Johnson’s counsel, the trial judge stated: “I didn’t hear anything about [the Blakleys’] sex life.” Those comments by the trial judge simply explained to counsel the trial court’s rulings, and, pursuant to Keller, supra, and Bryant, supra, we find no reversible error.
AFFIRMED.
THOMPSON, P.J., and PITTMAN and THOMAS, JJ., concur.
BRYAN, J., concurs in part and concurs in the result, with writing.

. Angela asserted a derivative claim of loss of consortium.

. Allums recalled seeing an olive-green Cadillac in front of the logging truck being driven *254 by Timothy. Timothy recalled the car in front of him as a green Cadillac Escalade, while Johnson recalled the car as a green Chevrolet Cavalier. Because this factual dispute is not relevant to the case, we simply refer to the car in front of Timothy’s vehicle as a "green car.”

. The testimony at this point is confusing and contradictory as to speeds and points in time at which different events occurred.

. Despite Timothy's testimony regarding speeds and positioning, the tanker truck did not strike the green car and the green car never stopped.

. Section 32-5A-88 is part of the "Alabama Rules of the Road Act,” Ala.Code 1975, § 32-5A-1 et seq.

. On appeal, the Blakleys have not challenged the trial court’s failure to instruct the jury on their theory of negligence per se. Any such challenge would have been waived for appellate review because the Blakleys failed to object to the trial court's refusal to give their requested instructions on that theory. See Beiersdoerfer v. Hilb, Rogal & Hamilton Co., 953 So.2d 1196, 1207 (Ala.2006) ("By not objecting to the trial court's failure to charge the jury regarding his promissory-fraud claim, Beiersdoerfer waived his promissory-fraud claim....”).

.The Blakleys asserted that argument in their written motion for a JML, which is found in the record. That written motion was undated and unsigned. They did not, however, argue that issue in support of their motion at the close of all the evidence.

. That traffic citation was subsequently dismissed.